(35 Misc. Rep. 83.)

### RAYNOR et al. v. SYRACUSE UNIVERSITY.

(Supreme Court, Special Term, Onondaga County. May, 1901.)

1. DEED—DELIVERY—ACCEPTANCE.

An owner of land contracted in 1871 to convey a part thereof to a university, and consented that the city might at any time continue a certain street from its then southern terminus upon and across the lands to be granted and the lands retained by the grantor. The terminus of the street at that time was upon lands north of those of the grantor, and not belonging to her, the owners of which she had no right to compel to open the street. Thereafter she conveyed such property, under her contract, including the site of the proposed continuation of the street, "subject, however, to Chestnut street through said premises as a public highway, heretofore laid out and conveyed or dedicated as such highway" by the said grantor. A year prior to such conveyance she had made a deed to the city of a strip across the land for a public street, and not otherwise, and thereafter the common council declared it a public street as shown upon the map. The deed was acknowledged and recorded, but never formally accepted by the city, which never laid out or worked the strip. Held, that as the deed to the city was beneficial to it, and it had thereafter granted to a street railroad rights of way over such street, the acceptance of the deed would be presumed as of the day it was recorded.

2. SAME—PRIORITIES.

As the deed to the university was recorded prior to the deed to the city, the university took title to the fee of the street, as against the city.

3. SAME—TITLE ACQUIRED.

The city, though it acquired no fee to the land occupied by the proposed street, in view of the contract entered into by its grantor with the university, and the deed to the university, acquired the right to occupy the strip as a street.

**4. SAME—STREETS—FAILURE TO WORK.**

Under Laws 1861. c. 311, § 1, where a city failed for six years after conveyance to it of a right to open a street to so open and work the street within six years from the recording of the deed of conveyance, the right was lost.

**5. SAME—CONSTRUCTION.**

Under the deed and contract with the university, the grantor reserved no servitude to have the street continued for the benefit of the lands which she did not convey, but the obligation of the university was only to permit the continuation of the street by the city; and, when such right was lost by nonuser by the city, the grantor retained no right as against the university.

**6. SAME—REASONABLE TIME.**

· Where a deed retained a right in a city to construct a street across the land conveyed "at any time," the phrase must be construed to mean that the city must act within a reasonable time.

**7. SAME—RESERVATIONS.**

As the granting to the city of the right to construct a street on the lands conveyed to the university would not connect the street through such lands with any existing street, because of an intervening section of land, which the grantor was not entitled to have opened, it not belonging to her, parties claiming under the grantor were not entitled to relief against the university, where it erected buildings on the land so granted to the city.

Action by Josephine G. Raynor and others against the Syracuse University to compel the removal of one of its buildings so far as erected, and to restrain it from continuing the erection thereof, on the ground that it encroached upon a certain street, which plaintiffs were entitled to have kept open. Complaint dismissed.

William G. Tracey, for plaintiffs.
J. B. Brooks and C. H. Lewis, for defendant.

HISCOCK, J. Three questions are presented in this case by the pleadings and proof. They are: First. What rights were originally secured by the public, or by the plaintiffs' ancestor and source of title, to have what was then known as "Chestnut Street," and now as "South Crouse Avenue," extended over defendant's premises, and over and through the spot now occupied by its Hall of Sciences, which is the building and encroachment complained of herein? Second. Have any rights originally secured by either the public or the plaintiffs' ancestor been lost through abandonment, nonuser, or otherwise? Third. Does said building, under existing conditions, so encroach upon or impair any substantial or material right of the plaintiffs as will lead a court of equity to cause its abatement and removal? I shall consider the material facts which I regard as established in this case in connection with and relating to each of said questions separately, rather than attempt to make one general statement thereof.

When defendant set about acquiring the lands upon which to institute and build its university, it acquired a large proportion thereof from three owners or sets of owners upon farm lots 201, 186, and 187, in Syracuse. Those upon farm lot 201 were obtained from one Smith and from Sperry and Short. Those upon lots 186 and 187 were obtained from Lucy Maria Raynor, the mother and source of title of these plaintiffs. Short and Sperry conveyed all their lands at that point. Both Smith and Mrs. Raynor retained other adjacent lands.

There was more or less negotiation between said parties and the defendant and the city of Syracuse with reference to running streets through the tract of land composed of what was conveyed to the defendant, and what was retained by said grantors Smith and Raynor. The lands retained by Mrs. Raynor laid between the southerly boundary of those conveyed to the defendant and the northerly boundary of Oakwood Cemetery. Those retained by Mr. Smith laid easterly of the ones conveyed to the university. Chestnut street had been opened and used by the public, as it extended in a generally southerly direction from East Genesee street towards the lands acquired by the defendant. Some reference is made to it in the conveyance of one Longstreet, who was an earlier owner and source of title of some of the lands in question upon farm lot 201, as extending upon said lands. It is referred to as a boundary in some of the earlier deeds. Also a resolution had been passed by the common council of Syracuse in 1852 that Chestnut street, as so referred to, be continued southerly to the south line of farm lot No. 201. But, as a matter of fact, it had never been laid out, opened, or in any manner used as a street on or crossing the premises in question. The old Chestnut street, as so referred to, was laid out in straight lines across the premises purchased by defendant upon farm lot 201, extending only to the south line of said lot, and not at all upon or across the premises purchased of Mrs. Raynor. In the negotiations for the purchase by defendant of the lands hereinbefore referred to, and which included the subject of continuing Chestnut street across the lands of Mrs. Raynor, it was decided to change somewhat the lines of said street upon farm lot 201, and to provide for a course across said lot and across farm lots 186 and 187 upon curved lines. Accordingly, October 31, 1870, George F. Comstock, Thomas B. Fitch, and Charles Andrews, acting as a committee for the defendant, presented a petition to the common council of the city of Syracuse, asking that said street might be slightly altered near its southern terminus (the southerly line of farm lot 201), and continued southward to Oakwood Cemetery through lands of Mrs. Raynor, "part of which are expected to be conveyed to the Syracuse University." They represented that Mrs. Raynor and the university, and all other parties interested, were agreed upon the proposed line of said street, which was described in a survey and represented on a map made by one Clarke, and which is in evidence in this case. Subsequently, and upon November 7, 1870, the common council passed a resolution changing the line of Chestnut street, as theretofore described, across lot 201, and continuing and extending it over lots 186 and 187 to the north boundary of Oakwood Cemetery for a width of 66 feet, in accordance with the lines and directions indicated in the petition and map last above referred to. Said resolution also provided that the strip of land so described "be, and the same is hereby, declared a public street or highway forever." It also recited that "the owners of the lands included in and affected by the said alteration and extension of Chestnut street have dedicated the same to the city for the uses and purposes of such street." In the purchase of lands by defendant from Smith, provision had been made by a deed from Smith to the

city for said New Chestnut street across lot 201, and which will be more fully considered hereafter. Likewise, provision had been made by the contract and deed between Mrs. Raynor and the defendant, and by a deed from Mrs. Raynor to the city, for said new street across the lands conveyed by her to defendant, and also those retained by her south thereof, and which I will now consider. The negotiations between Smith, the defendant, and the city, and those between Mrs. Raynor, the defendant, and the city, were separate. There was no general contract or proceeding, to which all were parties, which provided for the new street through all of the premises conveyed by both parties. Each grantor dealt separately in his own behalf. September 23, 1870, Mrs. Raynor made a contract with the defendant for the sale to it of the lands already referred to, and which consisted of about 33 acres, and which included the site of Chestnut street. The grantor agreed, upon payment being made as in said contract provided, that she would convey "a good, indefeasible title to said premises to said party of the second part, by a good, warranty deed, with full covenants." There was no exception or reservation of any land for a proposed street across said premises, but said contract contained a clause wherein said university "covenants and gives its consent irrevocably that the public authorities of the city of Syracuse may at any time continue and lay out Chestnut street from its present southern terminus (the southerly line of farm lot 201) upon and across the premises above described, in a direction towards Oakwood Cemetery." Provision, also, was made for the extension of what is known as "Irving Street" southerly upon the westerly side of said premises, as has subsequently in fact been done; also for a street 80 feet wide running east and west on the line between the premises conveyed to the defendant and other lands retained by Mrs. Raynor, and which street has been indicated upon various maps as "Croton Street," but has in fact never been laid out or worked or used by the public. On or about May 1, 1871, Mrs. Raynor executed to the university a conveyance for the purpose of carrying out said contract. Said conveyance was a warranty deed, which purported to convey 33.372 acres of land, including the site of said street and the spot whereon now stands the building complained of. Immediately following the description of said premises therein is the following clause:

"Subject, however, to Chestnut street through said premises as a public highway, heretofore laid out and conveyed or dedicated as such highway by the party of the first part."

Otherwise, there is no reference to said street, and no exception or reservation covering the same.

Mrs. Raynor executed a deed, dated October 30, 1870, to the city of Syracuse, whereby, by warranty deed, she conveyed a strip of land 66 feet wide across the premises conveyed by her to the defendant, and retained by her, south thereof, to Oakwood, and upon the new line of Chestnut street, already referred to, "to have and to hold the said strip or parcel of land, so far as the same is part and parcel of said farm lots Nos. 186 and 187, unto the said party of the second part, thereafter, as and for a public street or highway, and not

otherwise," and her covenant of warranty provided that it should apply only so long as said premises should "continue to be a public street or highway." Said deed was acknowledged the day after its date. A certificate of a county clerk to the official character of the person who took the acknowledgment is dated September 30, 1871, and the deed was not recorded until October 2, 1871. Two questions have arisen in regard to the legality and effect of this deed. The first one is presented by the contention of the defendant that there is no evidence that it was ever delivered to or accepted by the city of Syracuse. There is no direct verbal evidence upon this subject, but there are circumstances from which I think such delivery and acceptance can be fairly found. The deed was placed upon record October 2, 1871, and, if such a conveyance is to be regarded as a beneficial one for the grantee, the presumption of acceptance would flow from such record. Independent of that presumption, however, a resolution was passed by the common council of the city of Syracuse in 1872 granting to a street railroad certain rights of way over the street, as outlined and defined in the conveyance in question. And this fact, in my opinion, in connection with the recording of the deed, is sufficient to warrant a finding of acceptance and delivery.

The second question relates to the effect of the deed as against the defendant. As already stated, on or about May 1, 1871, Mrs. Raynor had executed to the defendant a warranty deed of premises which included those conveyed by her to the city of Syracuse, just referred to, and which deed was put on record a couple of days later, and thus several months before the deed to the city was recorded; and the query thus arises, what rights did the city of Syracuse acquire, as against the university, in the premises marked out for the street? There is no evidence from which I feel justified in finding that the deed to the city was delivered or accepted before the day of its record. As I have stated, there is no direct evidence of any person to the fact of its ever being delivered to the city, and there is no proof of any act or conduct upon the part of the city or its officials which warrants the presumption that the deed had been delivered prior to the date in question. It has been argued by plaintiffs' counsel that such presumption may be based upon the resolution of the common council adopted November 6, 1870, which was the resolution already referred to, changing the course of Chestnut street across the Raynor property from a straight line to a curved one. That resolution contained the following:

"Whereas, the owners of the land included in and affected by the said alteration and extension of Chestnut street have dedicated the same to the city for the uses and purposes of such street, therefore, further resolved, that the map of such alteration and extension of such street be forthwith filed in the office of the clerk of the county of Onondaga, and a copy or duplicate thereof in the city clerk's office."

It is to be borne in mind, however, that this resolution was predicated upon a petition presented by George F. Comstock and others, asking for the alteration in the course of Chestnut street, and in which petition it was stated "that Mrs. Raynor and the said university, and all other parties interested, are agreed upon the pro-

posed line of said street, * * * and that the proper deeds of dedication of the lands required shall be given to the city," etc. This petition was dated in Syracuse the same day that Mrs. Raynor executed the deed to the city in New York, and therefore it is proper to assume that the petitioners did not have in their possession, and present with said petition, the deed to the city. And, reasoning still further, it seems proper to assume that when the common council, in the resolution of November 7th, recited that the owners of the land, including Mrs. Raynor, had dedicated the premises included in Chestnut street, they based such recital upon the statements and premises of deeds contained in the petition of Judge Comstock and others, rather than the actual possession at that time of Mrs. Raynor's deed. If the deed had been delivered at that time, the common council would naturally have provided for its record in the same resolution which provided for forthwith filing in the office of the clerk of Onondaga county the map of the alteration which was included in the deed, and the necessary county clerk's certificate to the official character of the officer before whom Mrs. Raynor made her acknowledgment would have been obtained before September 30, 1871, its actual date. There is no other evidence upon which to base a finding of the delivery and acceptance of this deed at any date prior to the date of its record. I reach the conclusion, therefore, upon this question, that Mrs. Raynor's deed to the defendant was executed and delivered prior to the date when the deed to the city was delivered, and that therefore the defendant took title to the fee of the proposed street, rather than the city.

This conclusion, however, does not bar the other one,—that the city, by its deed, as against the defendant, acquired the right to use and occupy the premises for a public street. I think that this result and effect were secured by the contract and deed between Mrs. Raynor and the university, and that such right in behalf of the city is more in accordance with the terms and intent of these instruments than it would be to hold that the city took the fee to the land as against the university. The clause in the contract in question that the city might "at any time continue and lay out Chestnut street * * * upon and across the premises" granted to the university would certainly be more reasonably fulfilled through the enjoyment by the city of a right of way over the premises, than by its securing the absolute fee to a strip of land 66 feet wide. The clause in the deed to defendant was subject "to Chestnut street through said premises as a public highway heretofore laid out and conveyed or dedicated as such highway," etc. At the time this conveyance was executed, concededly, outside of its designation upon a map and in resolutions and petitions heretofore referred to, Chestnut street had not been "laid out" to any extent; and, as I have already indicated, outside of any binding force which the clause under consideration may have upon the defendant through acceptance of the deed containing it, there is no sufficient evidence that at this date any conveyance of Chestnut street had been executed by Mrs. Raynor to the city. This clause recites that Chestnut street had been "conveyed or dedicated," and, even though the conveyance to the city had not

been actually executed at this time, defendant is, nevertheless, in view both of the contract and of the deed, to be regarded as having taken its conveyance of its premises subject to such rights and exceptions in favor of a public street as may be fairly implied from the language used. It is a well-settled rule that the language of reservations or exceptions in a deed is to be construed more strongly against the grantor, and in favor of the grantee. Duryea v. Mayor, etc., 62 N. Y. 592; Jackson v. Blodget, 16 Johns. 172. Assuming that the reservation in question applied to the deed to the city when executed, or that the defendant is estopped from denying the existence of such rights in favor of the city for a public street over the lands in question as would be naturally implied from the language used in the deed, it seems to me that the rights reserved against it would be satisfied by holding that the city, under its deed from Mrs. Raynor, and by virtue of the contract and deed between her and the defendant, acquired a right of way across defendant's premises for a public street, and did not, by its deed, as against defendant, acquire the title to the land.

Proceeding upon the assumption that by the conveyance from Mrs. Raynor to the city, in accordance with the contract and conveyance between Mrs. Raynor and the defendant, there was dedicated to the public and given to the city the right to continue and lay out Chestnut street upon the lines indicated across the premises now owned by the defendant, and that the city did not acquire the fee to such strip of land, I come now to the consideration of the second question suggested at the beginning of this opinion,— whether the city and the plaintiffs, or either of them, have lost any of the rights originally thus acquired. Concededly, during the 30 years which have elapsed since the conveyances referred to, nothing has been done by the city or any one else in the way of laying out. opening up, working, or making suitable for travel this portion of the proposed street. It has never been used by the public or the plaintiffs or their grantor as a street, but has lain in common with the other lands owned by the defendant upon each side, and subject to use by the latter in such way and to such extent as it desired. It has not been opened and worked, within the meaning of the statutory provisions next hereinafter referred to. Horey v. Village of Haverstraw, 124 N. Y. 273, 26 N. E. 532; Excelsior Brick Co. v. Village of Haverstraw, 142 N. Y. 146, 36 N. E. 819; Beckwith v. Whalen, 70 N. Y. 430. Under such circumstances, section 1 of chapter 311 of the Laws of 1861 carried into the present highway law as section 99 of chapter 568 of the Laws of 1890, applies. The first statute provides that:

"Every public highway and private road already laid out and dedicated to the use of the public, that shall not have been opened and worked within six years from the time of its being so laid out, and every such highway hereafter to be laid out, that shall not be opened and worked within the like period, shall cease to be a road for any purpose whatever," etc.

The latter section provides, to substantially the same effect, that:

"Every highway that shall not have been opened and worked within six years from the time it shall have been dedicated to the use of the public or laid out shall cease to be a highway," etc.

An effort has been made by plaintiffs' counsel to draw a distinction between highways in cities and in the country, as governed by these statutes. The distinction, however, seems to be one not applicable to this case, if I am right in my conclusion that the city did not secure the fee to the highway. It is settled that where the fee is secured the satutes in question do not apply, but otherwise they do apply as well to one class of highways as to the other, and are applicable to the street involved in this action. Ludlow v. City of Oswego, 25 Hun, 260; Woodruff v. Paddock, 56 Hun, 288, 9 N. Y. Supp. 381, affirmed in 130 N. Y. 621, 29 N. E. 1021. He has also suggested, rather than urged very strenuously, that this abandonment of a highway does not take effect until the commissioner of highways has filed a description of the abandoned highway as provided by the statute. This, however, does not seem to be the meaning of the language used, and no such construction has been placed upon it by the decisions called to my attention. I have not considered so much of the alleged street or highway in question as lies north of the premises granted by plaintiffs' ancestor, but the rule is laid down in the case of Horey v. Village of Haverstraw, supra, that, even if Chestnut street had been opened and worked as to that portion, it would cease, as to the part heretofore considered, to be a highway, if not opened and worked within the statutory time. I conclude, therefore, upon this question, that the city of Syracuse has lost its right to open and use for a public highway so much of the original proposed Chestnut street as was granted or dedicated by plaintiffs' ancestor.

Plaintiffs' counsel, however, has earnestly urged that Mrs. Raynor, and through her these plaintiffs, acquired a right to have Chestnut street reserved and kept open through the lands granted by them, which was independent of the right granted to the city, and which could not be lost or abandoned through any act or neglect upon the part of the city. He argues that out of the negotiations and transactions between Mrs. Raynor and the university, as evidenced by the contract and deed referred to, a servitude or easement was imposed upon the lands granted to the latter, in favor of those retained by Mrs. Raynor, to have Chestnut street maintained as a passageway, even if not a public street; that this right was created in favor of Mrs. Raynor, the grantor, and continues to exist in favor of her descendants, even though the city has lost its rights. Counsel cites in behalf of his contention a large number of cases, and especially calls attention to, and seems to rely upon, that line of authorities which hold that where a grantor has conveyed lands, bounding them by a street, his grantee and their grantees have a right to insist that the strip of land described as a boundary and street shall be kept open as such for their benefit, even though it has never been opened or dedicated to or accepted by the public. And he further argues that the same principle may be applied inversely in favor of the grantor as against the grantee; that, when the grantee has taken a conveyance which apparently recognizes and is subject to a street, the grantor and his representatives and successors may insist upon a street being maintained, even though one has never been created

in favor of the public; that an easement may be created in favor of the grantor upon the lands granted in the same way that a right of way may pass as an appurtenance to the grantee in favor of the lands conveyed to him. The authorities cited do not seem to me to sustain the rights claimed for plaintiffs in this case. Where a grantor conveys lands, in a proper and necessary manner referring to or bounding them by streets, it is well settled, as claimed by counsel, that the grantee has a right to have those streets kept open, even though the public has acquired no such right. There is an implied covenant that there is such a street, which the grantor is prohibited and estopped from denying. Bank v. Nichols, 64 N. Y. 65. The grantee acquires the right of way as an appurtenance to the lands conveyed to him. Cox v. James, 45 N. Y. 557, 561. It is to be assumed that the grantor has received the full value of the streets, in the increased price of the lots sold upon the same. Bissell v. Railroad Co., 23 N. Y. 61, 66. But I do not think that in this case the defendant has taken its lands subject to any special right of way created in favor of its grantor, but that it took subject only to the right of the city to open and maintain a public street across its premises. It is claimed that it was very desirable for Mrs. Raynor that she should secure a street through the premises granted to defendant for the benefit of the lands lying south thereof, which she retained. Very likely that was so, and undoubtedly she might have secured to herself, and for the benefit of the lands retained by her, a right of way across defendant's premises, which should exist even though the city did not acquire or should lose the right to lay out and open a public street. But, as it seems to me, she did not do this, but limited her rights to, and took her chances upon, the opening and maintenance by the city of a public street, and that she made defendant and its premises subject only to that burden and contingency. The clause in the contract for the sale by her to the defendant of its lands, which is the first expression of the agreement between the parties, provides that:

"The said party of the second part [the defendant herein] hereby covenants and gives its consent irrevocably that the public authorities of the city of Syracuse may at any time continue and lay out Chestnut street from its present southern terminus upon and across the premises above described," etc.

Here was an agreement by the defendant that the proper authorities might lay out a public street. The language does not create in my mind the conclusion that the defendant thereby agreed to any private right of way to Mrs. Raynor and her successors, or to any special right in their behalf, to have a street or passageway outside of one which the city might decide to lay out. The clause does not guaranty to Mrs. Raynor a right of way, or a special right to have a street. It guaranties that the city shall have the right to lay out a street when it sees fit, and leaves Mrs. Raynor to take her chances upon the city so laying out such street. In like manner, the deed to which this contract led, and in which it became merged, conveys, "subject, however, to Chestnut street through said premises as a public highway heretofore laid out and conveyed or dedicated as

such highway by said party of the first part." This clause likewise seems to me to embody the same idea that defendant took its lands subject to a public highway, and subject only to a public highway in case it was maintained as such. The defendant is entitled to a reasonable construction of the language used. It might very well be willing to consent that the city should maintain a street across its lands, believing that it, as well as its grantor, would derive benefits from such a street. But a very different burden would be imposed upon the premises if it should be held that it had taken subject to a reservation in favor of its grantor to have a right of way over a strip of land 66 feet wide through the center of its lands, even though the city declined to lay out and maintain, in proper condition for public travel, such street. I reach the conclusion, therefore, upon this point, that the plaintiffs' grantor, by her contract and deed with the defendant, limited her rights to the opening and maintenance of a public street by the city of Syracuse through the premises in question, and did not reserve or secure to herself any other rights or privileges; that the limit of defendant's obligation was to allow the city of Syracuse to construct and maintain Chestnut street across its lands; and that, when the latter failed and omitted so to do, its obligations ceased. Wheeler v. Clark, 58 N. Y. 267; Jackson v. Hathaway, 15 Johns. 447, 453, 8 Am. Dec. 263; Insurance Co. v. Stevens, 101 N. Y. 411, 5 N. E. 353.

It may be suggested that the contract between Mrs. Raynor and defendant provided that the city of Syracuse might "at any time" continue and lay out Chestnut street, and that therefore the six-years statute, hereinbefore referred to, would not apply. My opinion would be, in the first place, that this contract was merged and satisfied by the deeds to the university and to the city, and that these conveyances define and limit the rights of the parties. In the second place, however, if this were not so, the provision "at any time" would be construed to mean a reasonable time, which has long since elapsed.

If the conclusions which I have reached as to the nature and loss of the rights originally acquired by the city of Syracuse and plaintiffs' grantor to have Chestnut street maintained across the lands conveyed by Mrs. Raynor to defendant are correct, they lead to the still further conclusion that the plaintiffs cannot recover in this action. If, however, it should be assumed that the right still exists in favor of plaintiffs to have a street maintained upon and across the premises so conveyed to the defendant by Mrs. Raynor, upon the lines originally indicated, I am led to the consideration of the third and last question suggested at the beginning,—whether the right to have said street so continued at said point would be of any such use or value to plaintiffs that the encroachment upon its line by defendant's building in question causes an injury to plaintiffs so special and important in its nature that a court of equity will compel the abatement and removal of said building. The answer to this question involves the consideration of the conditions surrounding said strip of proposed street, and a statement and consideration of facts some of which have not as yet been referred to. It is

claimed by defendant that said section of the street, if opened, would start from plaintiffs' premises upon the south, and be blocked and terminated at the southerly line of lot 201, thus leading nowhere and being of no use or value to plaintiffs. Chestnut street, as projected upon the altered lines fixed at about the time of the conveyance to the defendant, hereinbefore referred to, extended from a street bounding the premises of defendant upon the north, and now known as "University Place," through to Oakwood Cemetery, which bounds upon the south the premises then owned by plaintiffs' grantor, and now owned by them. The section of the proposed street across the premises granted to the defendant by Mrs. Raynor was bounded on the north by the southerly line of farm lot 201, and upon the south by the center line of a proposed street running nearly at right angles with it, to be known as "Croton Street"; and the premises retained by Mrs. Raynor, and now owned by these plaintiffs, were and are bounded upon the north by said center line of Croton street. As heretofore stated, Croton street has never been opened to or used by the public for travel. There is no entrance from Chestnut street through or into Oakwood, so that it is blocked at that end. Plaintiffs do not own any land abutting upon either side of the section of Chestnut street under consideration, but their premises lie at the southerly end of said section. The premises upon both sides thereof are owned by the defendant, and, so far as appears, are largely open and unoccupied by buildings, except the one complained of. Said building is a long distance from the premises now owned by plaintiffs. Said latter premises have an outlet upon a street running upon the westerly side thereof, if not upon one extending along the easterly side thereof. University Place, bounding defendant's lands upon the north, is a street which has been accepted by the city, and is used for public travel. The situation of the land included within the proposed lines of Chestnut street, between said University Place and the section of Chestnut street covered by Mrs. Raynor's deed, and of the abutting lands, is as follows: The lines of the proposed new or altered Chestnut street nearly coincided with the lines of the old Chestnut street at what is now the northerly line of University Place, and from that point curved and deflected towards the east as they were continued across the premises conveyed by Mrs. Raynor. Short and Sperry conveyed to the defendant lands lying upon the westerly side of, and extending to the center of, old Chestnut street, between University Place and the southerly line of lot 201. One Smith conveyed to defendant lands lying upon the easterly side of, and extending to the easterly line of, the proposed new Chestnut street. He also conveyed to said defendant the triangle of land bounded by the southerly line of farm lot 201 and the center lines, respectively, of the old and new proposed Chestnut street. The land lying between the easterly and center lines of the new Chestnut street he conveyed to the city of Syracuse, except that his title did not cover a small strip of said lands upon the westerly side thereof at the northerly line of University Place. These conveyances were all executed at about the same time as Mrs. Raynor's to the defendant. There is nothing in the deed from Short and Sperry to

the defendant, or in the contract for the sale of the lands covered thereby, which, as I understand it, is claimed to impose upon the defendant any obligation to keep open the new Chestnut street. The agreement between Smith and the defendant called upon the latter to open Chestnut street south of farm lot 201, but neither said contract, nor the deed executed in pursuance of it, imposed upon defendant any obligation as to Chestnut street north of farm lot 201, outside of the fact that the descriptions referred to said street. The deed from Smith to the city of Syracuse of the easterly half of Chestnut street was executed and delivered some time prior to December 14, 1870, and it recites a conveyance of the land in question "so long as the same shall be used as a public highway or street, and upon the express condition that said street shall be laid out and opened to the public on or before May 1, 1871," and also that said party of the second part is "to have and to hold the said premises so long as the same shall be used as a public highway or street." As a matter of fact, the city of Syracuse has never entered upon, opened up, or worked said street, and the same has never been used by the public as a highway. The claim was made by plaintiffs upon the trial that at one time, under a franchise granted by the city, a street railway extended its line through part of said section of said street. This claim, however, was disputed, and I do not think that the plaintiffs have produced such a preponderance of evidence upon that question as entitles me to find said fact established. There has been a roadway leading from University Place southerly over a strip of this proposed street, but that has been a private way maintained by and under the control of the defendant.

We thus have it that of the lands over which Chestnut street would have to be continued from the southerly line of farm lot 201, where the Raynor section terminates, one half is owned by the defendant, and the other half is covered by a deed to the city which contained express provisions and conditions that it should be used for a street within a certain time, and with which conditions and provisions the city has failed to comply for 30 years. Mrs. Raynor, as I have before stated, was in no way a party to the contracts and deeds between Short and others, and Smith and the defendant and the city of Syracuse, relating to this northerly portion of Chestnut street. So far as I can perceive, she has no right to compel defendant to open up and dedicate the westerly half of said section of Chestnut street, and I see no way in which she can control, as between Mr. Smith and the city of Syracuse, the right to use the easterly half, which has unquestionably been forfeited by the city at the election of Mr. Smith. It, at least, can be said, without any dispute of fact, that upon this trial there has not developed any probability of the street being opened up and continued through farm lot 201 to the nearest public highway,—University Place. In addition to the conditions already mentioned, the defendant, many years since, erected one of its buildings within the lines of Chestnut street upon said farm lot. It is well settled that in order to secure relief such as is sought by plaintiffs in this case, abating an obstruction in the highway, the plaintiffs must establish—First, that they are

suffering special damages from it; and, secondly, that the injury resulting therefrom is of a substantial nature, and one for which adequate compensation cannot be made in the way of money damages. The two grounds upon which relief is secured in such a case as this ordinarily are that the alleged nuisance obstructs the light and air of the complainant, and also obstructs and interferes with his passage over the highway in question to and from his premises. It would be the merest fiction in this case to hold that the building erected by defendant obstructs plaintiffs' light or air. The country is substantially open in the locality in question, and the building is a long distance from plaintiffs' land. No adequate reason for removing the building upon this ground is established. Adler v. Railroad Co., 138 N. Y. 173, 180, 33 N. E. 935. Neither does the building impair any substantial or beneficial right of the plaintiffs, by obstructing any passage over the street which would be useful or beneficial to them. They have no abutting lands, ingress to and egress from which is stopped. They could not pass through this portion of the street, if open, to any other highway or desirable point, because of the condition existing between this section of Chestnut street and University Place, already commented upon. Absolutely free and unobstructed right of passage would simply give them the privilege of passing to and over a cul-de-sac extending from their premises upon the south to farm lot 201 upon the north, with no point or thing between which they have any occasion to go to. Under these circumstances, they are not entitled to recover the relief demanded. In Adler v. Railroad Co., supra (page 180, 138 N. Y., and page 937, 33 N. E.), the rule is quoted by Judge Andrews as elementary "that a private individual cannot maintain an action to abate a public nuisance unless he is specially injured; nor will the court exert its equitable power of injunction in a case of a violation of a mere abstract right, unaccompanied with any substantial injury, present or apprehended." In Wakeman v. Wilbur, 147 N. Y. 657, 663, 42 N. E. 341, the court lays down the rule that, while a person who sustains a private and peculiar injury from the obstruction of a public highway may bring an action to abate the nuisance, the injury must be special, and not merely nominal. In Prince v. McCoy, 40 Iowa, 533, substantially the same question here under discussion was decided adversely to the plaintiff. He had brought an action to restrain the defendant from obstructing or inclosing a public street. The defendant, in answer to the petition, among other things, alleged that the streets in question, in their then condition, were not susceptible to use as such, and had not theretofore been used, and that therefore plaintiff would in no manner be injured in the free use and enjoyment of his property by their inclosure. The plaintiff's demurrer to this answer was overruled; the court holding that, if the streets had not been and could not be used for the purpose of their dedication, it was impossible to see in what respect plaintiff could be injured. See, also, to same effect, in case of criminal proceedings, State v. Shinkle, 40 Iowa, 131. In Zabriskie v. Railroad Co., 13 N. J. Eq. 314, it was held that the court of equity would not abate what was alleged to be an obstruction in the highway, where, under conditions as they existed at the time of

suit brought, such obstruction could cause no real or substantial
injury to the complainant. In order that a plaintiff may succeed in
an action of this kind, he must show that he has suffered or will
suffer substantial injury, for which he would be entitled to recover
damages at law. A court of equity will intervene when the injury
complained of is undeniably a nuisance, and irreparable injury will
ensue. Richeson v. Richeson, 8 Ill. App. 204. See, also, for general
principles applicable to an action of this kind, Callanan v. Gilman,
107 N. Y. 360, 14 N. E. 264; Buchholz v. Railroad Co., 148 N. Y. 640,
43 N. E. 76. In accordance with these views, findings and judgment
may be prepared dismissing plaintiffs' complaint, with costs.

Complaint dismissed, with costs.