Argued March 23, affirmed May 16, 1916.

PAULSON *v.* WEEKS.

(157 Pac. 590.)

</div>

**Pleading—Demurrer—Admission.**

1. When a pleading is challenged by demurrer, the court must assume that its allegations are true.

**Corporations—Sale of Stock—Contract to Repurchase—Legality.**

2. A contract whereby the seller of corporate stock agreed to repurchase it at any time upon demand, should the buyer become dissatisfied, was legal and binding, violating no statute, and not being against public policy, and one which the courts cannot unmake merely because it may have been unwisely made.

**Corporations—Sale of Stock—Option to Rescind.**

3. A contract whereby the seller of corporate stock agrees to repurchase on demand, if the buyer is dissatisfied, is not a conditional contract for the sale or return of the stock, but embraces a complete sale, with an option in the buyer to rescind.

**Corporations—Sale of Stock—Agreement to Repurchase—Satisfaction of Buyer.**

4. Under such contract, if the buyer became dissatisfied, he had the right to rescind, when he became honestly and in good faith dissatisfied.

**Corporations—Sale of Stock—Option to Rescind—Time for Exercising—"Any"—"Any Time."**

5. A contract for the sale of stock of a mining company, giving the buyer the option to rescind if he became dissatisfied with his purchase "at any time thereafter," set a reasonable time, and did not give unlimited time, though primarily "any" implies unlimited choice as to the particular unit, number or quantity, and generally signifies an indeterminate unit or number of units out of many or all, as "any time," employed in such agreements, means reasonable time.

Contracts—Reasonable Time—Question for Jury.

6. Ordinarily, the question of what is a reasonable time for the exercise of an option must be submitted to the jury.

[As to when reasonable time is a question of law, see note in 17 Am. Dec. 544.]

Corporations—Sale of Stock—Option to Rescind—Exercise in Reasonable Time.

7. The buyer of stock in a mining company, who waited for more than seven years from the date of the contract of sale, more than five years from the completion of the sale, and more than three years from the time he became dissatisfied, before exercising his option to demand rescission, failed to exercise such option within a reasonable time.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.    Statement by MR. JUSTICE HARRIS.

L. L. Paulson commenced this action to recover $6,500 which he paid to F. O. Weeks for 11,250 shares of the capital stock of the Big Hill Coal Mining Company, an Oregon corporation. The plaintiff has appealed from a judgment which was entered for the defendant after a demurrer to the amended complaint had been sustained and the plaintiff had refused to plead further. On February 26, 1907, the defendant was the owner of 7,500 shares of stock, which he had acquired from one White, and he had also contracted with Henry Stockem for the purchase of 7,500 additional shares of stock. The amended complaint alleges that on the day mentioned Weeks agreed to deliver to Paulson the White stock for $5,500 and one half the Stockem stock "for whatever the same cost when he had obtained the same, all upon the following terms, conditions, and considerations, to wit: That said defendant would and should sell said shares of stock to plaintiff for the price above set out, and that if plaintiff should at any time thereafter become dissatisfied with the purchase of said shares of stock, defendant would repay to plaintiff the said sums of money so paid to defendant by plaintiff as the pur-

chase price of said shares of stock with 8 per cent interest per annum, upon demand made by plaintiff upon defendant therefor, and the return to defendant of said capital stock."

The pleading states that pursuant to the agreement plaintiff purchased 11,250 shares of stock; that on February 26, 1907, defendant was paid $5,500 for the White stock, which was delivered on that day, and that on February 2, 1909, the purchase was completed by the delivery of 3,750 shares of the Stockem stock to plaintiff, who at the same time paid to Weeks the sum of $1,000 upon the claim of the defendant, and that $1,000 "was the amount said shares of stock had cost him." It is also recited in the amended complaint that the defendant induced the plaintiff to purchase the stock by fraudulently representing that the stock was worth $1 per share, when it was practically worthless; that the company had plenty of money in the treasury, when it was without funds to work the mine; and that he would immediately put up bunkers, but that he had not done so. The plaintiff also charges that the defendant did not pay as much for the stock as he represented, and that he is exploiting the mine in his own interest, and has so manipulated the affairs of the company "as to bring it into such disrepute that there is no market for said stock and no sale therefor at any price." It appears from the pleading:

"That on or about the first day of July, 1911, plaintiff became and is dissatisfied with the purchase of said shares of stock."

And after the averments of fraud and misrepresentation already alluded to we read:

"That although plaintiff became dissatisfied, on or about the first day of July, 1911, as hereinbefore alleged, he did not become fully aware of the extent of

said misrepresentation and of the fraud and deception practiced upon plaintiff by defendant, and of the utter worthlessness of said shares of stock, until on or about the twenty-fifth day of November, 1914, when he made demand upon defendant for the repayment of said purchase money and tendered back to him the said shares of stock as hereinafter alleged."

. The defendant refused to rescind. The plaintiff has placed the stock in the custody of the clerk of the court for the defendant.        AFFIRMED.

For appellant there was a brief over the names of *Mr. Albert H. Tanner* and *Mr. George F. Brice,* with an oral argument by *Mr. Tanner.*

For respondent there was a brief over the names of *Mr. Wilson T. Hume, Mr. W. A. Leet* and *Mr. Will H. Bard,* with an oral argument by *Mr. Hume.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. Reducing the pleading to its substance, it discloses a situation where Weeks agreed to sell 11,250 shares of stock; 7,500 shares were delivered and paid for on February 26, 1907, and the remaining 3,750 shares were delivered and paid for on February 2, 1909. The agreement for the sale provides that "if plaintiff should at any time thereafter become dissatisfied with the purchase," the defendant would repay the purchase money, with interest. Paulson became dissatisfied on July 1, 1911, but it does not appear that he gave notice of his dissatisfaction until November 25, 1914, when he says he became fully aware of the worthlessness of the stock and demanded repayment of the purchase money. This action was commenced on January 8, 1915. · For the purposes of

this discussion we must assume that the amended complaint speaks the truth when the pleading is challenged by a demurrer.

This action does not involve an attempt to rescind a contract on account of misrepresentation or fraud, but the plaintiff is seeking to recover money which he alleges the defendant agreed to repay if the plaintiff became dissatisfied with the stock at any time. It is true that averments of fraud and misrepresentations are found in the pleading, and yet it is obvious that they are not employed as the foundation for a rescission of the sale and the recovery of damages. The allegations of fraud and misrepresentation are probably designed to inform Weeks of the circumstances upon which Paulson contends that he was honestly and in good faith dissatisfied, and that his dissatisfaction was not capricious and arbitrary: *Lumberman's Nat. Bk.* v. *Minor,* 65 Or. 412 (133 Pac. 87); 9 Cyc. 624; 6 R. C. L., p. 952. The plaintiff rests his asserted right to rescind upon an express stipulation, which is a component part of the only contract which the parties entered into.

2. The contract was legal and binds the parties. It violates no statute, and is not against public policy; and, since the parties had the right to enter into the agreement, courts cannot unmake the contract merely because it may have been unwisely made: *Johnston* v. *Trask,* 116 N. Y. 136 (22 N. E. 377, 15 Am. St. Rep. 394, 5 L. R. A. 630); *Fitzpatrick* v. *Woodruff,* 96 N. Y. 561; *Wooster* v. *Sage,* 67 N. Y. 67; *Morgan* v. *Struthers,* 131 U. S. 246 (33 L. Ed. 132, 9 Sup. Ct. Rep. 726); *Schultz* v. *O'Rourke,* 18 Mont. 418 (45 Pac. 634); 35 Cyc. 128.

3-5. The contract relied upon by the plaintiff is not a conditional contract for the sale or return of stock,

but it embraces a completed sale with an option to the buyer to rescind if he becomes dissatisfied: 35 Cyc. 127. Since Paulson plants his right to rescind upon a stipulation in the agreement of sale, it necessarily follows that the stipulation which confers the right to rescind must also be taken as the measure of that right. The terms of the contract permit Paulson to rescind if he becomes dissatisfied with the purchase "at any time thereafter." The agreement involves two elements: (a) The quality of the right to rescind; and (b) the time within which the right must be exercised. The right to rescind exists when Paulson is honestly and in good faith dissatisfied. The time within which the right may be exercised depends upon the meaning of the words "at any time thereafter." The plaintiff argues that the quoted language means time without limit, while the defendant contends that it implies a reasonable time. Primarily the word "any" implies unlimited choice as to the particular unit, number or quantity, and generally signifies an indeterminate unit or number of units out of many or all: Century Dictionary. Like most general terms, however, the word may have one of several meanings, according to the subject which it qualifies, and the meaning is often restrained and limited by the context or subject matter: 3 C. J. 230. The words "any time," when employed in agreements analogous to the one presented here, are almost universally construed to mean a reasonable time: *Fletcher* v. *Lyon,* 93 Ark. 5 (123 S. W. 801); *Park* v. *Whitney,* 148 Mass. 278 (19 N. E. 161); *Ellis* v. *Durkee,* 79 Vt. 341 (65 Atl. 94); *Raynor* v. *Syracuse University,* 35 Misc. Rep. 83 (71 N. Y. Supp. 293); *Shellar* v. *Shivers,* 171 Pa. 569 (33 Atl. 95); *Perry* v. *Acme Oil Co.,* 44 Ind. App. 207 (88 N. E. 859); *Hill* v. *Hill,* 113 Mass. 103 (18 Am.

Rep. 455); *St. James* v. *Erskine,* 155 Mich. 606 (119 N. W. 897). No adjudicated case has been called to our attention, nor have we been able to discover one after making an independent search, where the words "any time" have been held to import perpetuity, when used in a contract similar to the agreement relied upon by the plaintiff. Furthermore it must be remembered that the parties were dealing in mining stock, a kind of property which is liable to great fluctuation in value; and consequently the very character of the property purchased by Paulson furnishes an added reason for adhering to the construction usually adopted, and holding that the words "at any time thereafter" imply a reasonable time. The contract, therefore, gave to Paulson a reasonable time only within which to become dissatisfied and rescind the sale.

6, 7. Ordinarily, the question of what is a reasonable time must be submitted to the jury, but sometimes the court is enabled to say as a matter of law that a reasonable time has expired: *McGregor* v. *Oregon R. & N. Co.,* 50 Or. 527, 537 (93 Pac. 465, 14 L. R. A. (N. S.) 668). The facts relating to the instant case are few and simple. Paulson received and paid for 7,500 shares on February 26, 1907, and the remaining 3,750 shares were delivered and the sale completed on February 2, 1909. Paulson became dissatisfied on July 1, 1911, but there is no suggestion or intimation that he communicated notice of his dissatisfaction to Weeks until November 25, 1914. If Paulson had demanded a rescission of the sale shortly after he became dissatisfied, perhaps the court could not say that a reasonable time had elapsed; but he waited for more than seven years from the date of the contract, more than five years from the completion of the sale, and

more than three years from the time he became dissatisfied, before he demanded a rescission of the sale. Manifestly, the delay was unreasonable. Paulson did not exercise his right within a reasonable time. The statute of limitations has no application. The right to rescind was available within a reasonable time, but the right was extinguished the very moment the reasonable time period expired. The contract gave to Paulson the right to rescind if he became dissatisfied, but he was obliged to exercise that right within a reasonable time, and, having failed to use his right within a reasonable time, the right was irretrievably lost.

Moreover, the right of rescission must be exercised promptly, whether it be conferred by the law or by a contract. Instead of demanding a rescission in July, 1911, when he became dissatisfied and entitled to a rescission, Paulson stood by for more than three years without taking any steps toward placing the parties *in statu quo.* Again the court can say as a matter of law that the delay was unreasonable: 2 Mechem on Sales, p. 686.

The judgment of the Circuit Court is correct, and it is affirmed.                              AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE BENSON concur.