*Decision will be entered under Rule 50.*

JOHN SHERWIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE MID-CONTINENT SECURITIES COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANCIS M. SHERWIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 106728–106730. Promulgated February 18, 1942.

*Benjamin F. Fiery, Esq.*, for the petitioners.
*Thomas F. Callahan, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in tax for 1938 as follows:

| Petitioner | Docket No. | Tax | Deficiency |
|---|---|---|---|
| John Sherwin | 106728 | Income | $7,456.97 |
| Mid-Continent Securities Co. | 106729 | Income | 5,535.57 |
| | | Personal holding company surtax | 74,223.92 |
| Francis M. Sherwin | 106730 | Income | 7,936.09 |

The questions in issue are:

(1) Whether the Mid-Continent Securities Co. must include in its gross income for 1938 $82,250 paid as dividends upon certain shares of stock which that company claims to have sold to its two principal stockholders on December 20, 1937, by whom the dividends were actually received.

(2) Whether petitioners John Sherwin and Francis M. Sherwin are each entitled to deduct from his gross income for 1938 interest paid to the Mid-Continent Securities Co. pursuant to the contract for the purchase of the shares of stock above referred to.

The material facts have all been stipulated. We adopt the stipulation as our findings of fact.

The individual petitioners are residents of Willoughby, Ohio. The company also has its principal office in Willoughby, Ohio. All of the petitioners filed their income tax returns for 1938 with the collector at Cleveland, Ohio.

The Mid-Continent Securities Co. was incorporated under the laws of the State of Ohio on August 17, 1922. It has an authorized capital stock of 20,000 shares of class A stock of a par value of $100 per share, and 500 shares of class B stock of no par value. John Sherwin and Francis M. Sherwin each acquired 250 shares of class B stock of the company by purchase in 1922 and each acquired by inheritance 2,875 shares of class A stock from the estate of their father, John Sherwin, on January 16, 1934. On December 31, 1937, and during the year 1938, there were outstanding 500 shares of class B stock and 5,750 shares of class A stock. Each of these individuals, together with members of his family, owned during 1938 one-half of the issued and outstanding shares.

The voting power of the company is vested in the class B stock. The class A stock may be retired at any time at a price of $100 per share by unanimous action of the board of directors.

For many years the company was actively engaged in the buying and selling of securities. Under recent revenue acts the company has been classified as a personal holding company.

The company has always maintained a separate office, owns its own office furniture and fixtures, conducts its business on its own letterhead stationery, owns a vault, and rents a safety deposit box. The books and records of the company have always been maintained in the most detailed manner by a competent accountant employed on a full-time basis by the company. The records and accounts of the company are checked each year by the Bureau of Internal Revenue. The company has its own deposit accounts with banks for the deposit of its funds. All funds and deposit accounts of the company have been kept completely separate from the funds and deposit accounts of its stockholders and officers.

The income tax returns of all of the petitioners for the years 1937 and 1938 were made on the cash receipts and disbursements basis.

The company had prospered and by the end of 1936 had accumulated an earned surplus in excess of $1,000,000. By a letter dated June 12, 1937, John R. Kirk, revenue agent in charge of the Cleveland division, advised the Midland Bank of Cleveland, Ohio, that the United States Treasury Department had determined: "that the loss on stock of The Midland Bank should be allowed as a deduction to stockholders on their income tax returns for the year 1937." The Mid-Continent Securities Co. owned 5,357.74 shares of that stock at a cost of $1,434,998.76. With the deduction of this loss its return for 1937 would show a very large net loss.

In December 1937 the company owned 57,300 shares of the Richman Bros. Co. stock and 12,803 shares of the common stock of the Valley Mould & Iron Corporation. The stock of the former company was listed on the Cleveland Stock Exchange. There was only a thin market for the shares, the total number of shares being sold on the exchange during 1937 amounting to 29,602 shares. The largest number of shares sold in any month was in March, when 3,367 shares were sold.

During December 1937 the stock sold on the stock exchange at prices ranging from 36⅛ down to 30. The fair market value of the shares on December 20, 1937, was $33 per share.

The shares of stock of the Valley Mould & Iron Corporation were not listed on any exchange. There were some "over-the-counter" transactions in the common stock and the fair market value of the shares on December 20, 1937, was $20 per share.

The Mid-Continent Securities Co. desired to sell some of its holdings of stock of the Richman Bros. Co. and of the Valley Mould & Iron Corporation, in which it had a large paper profit. This profit could be used to reduce a part of its net loss for 1937. It decided to sell 27,000 shares of Richman Bros. Co. stock and 5,000 shares of Valley Mould & Iron Corporation. It was impossible to obtain the

fair market price for the stock on a sale of such large blocks. It considered selling them to its two principal stockholders, John Sherwin and Francis M. Sherwin, but before doing so consulted the revenue agent in charge as to whether there was any provision of law or regulation of the respondent to the effect that such a transaction would not be recognized. The question was raised as to whether such "self dealing" had any bearing upon the tax question. The revenue agent knew of no such provision of law or regulation in a case where a taxpayer sold shares of stock at the market and realized a gain therefrom.

On December 20, 1937, there was a meeting of the board of directors of the company at which the sale of 13,500 shares of no par common stock of the Richman Bros. Co. and of 2,500 shares of common stock of the Valley Mould & Iron Corporation was authorized to each of the petitioners John Sherwin and Francis M. Sherwin. The purchasers were not in a position to pay the full amount of the purchase price in cash at once. Each entered into a contract with the company by which he was to acquire the shares by a down payment of $5,000 and pay the balance on or before December 1, 1942, together with interest at the rate of 4 percent per annum, payable quarterly. The agreement provided that each purchaser should pay to the company at least 50 percent of all dividends received by him upon the shares acquired and that if the amount of dividends received was not sufficient to pay the interest due for any year it should be paid on or before the 10th day of January of the succeeding calendar year. The contract further provided that:

The Buyer shall have the right on or before December 1, 1942, to surrender to the Seller the aforesaid Stocks in full payment and satisfaction of the unpaid purchase price and all accrued interest thereon. Upon the delivery and surrender to the Seller of said Stocks the Buyer shall thereby be released and discharged of all liabilities hereunder and the Seller shall retain all payments received by it hereunder.

Following the meeting of the board of directors of the company a memorandum of sale dated December 20, 1937, was executed by each of the purchasers and the Mid-Continent Securities Co. Certificates for 13,500 shares of the Richman Bros. Co. stock were endorsed and transferred to the name of John Sherwin under date of December 21, 1937. Likewise, 2,500 shares of Valley Mould & Iron Corporation stock were transferred to John Sherwin on December 21, 1937, and registered on the corporation's stock record books of Valley Mould & Iron Corporation in his name on December 22, 1937. The same procedure was followed with respect to the transfer of shares to the name of Francis M. Sherwin.

On December 20, 1937, the Mid-Continent Securities Co. paid a total sum of $1,600 cash for United States documentary stamps for

the transfer of the Richman Bros. Co. stock and Valley Mould & Iron Corporation stock to the name of John Sherwin and Francis M. Sherwin, respectively.

Since December 22, 1937, the certificates covering the shares of stock set forth in each of the aforesaid "Memorandum of Sale" stood in the name of John Sherwin and Francis M. Sherwin, respectively, on the stock record books of the respective companies.

Pursuant to the provisions of each memorandum of sale each respective "buyer" executed stock transfer powers covering the certificates representing the stock transferred in his name and delivered the same, together with the certificates covering said shares of stock, to the Mid-Continent Securities Co. in pledge to secure the payment of the balance shown to be due on these securities.

Since December 21, 1937, John Sherwin and Francis M. Sherwin have each exercised the voting rights of the shares of stock standing in his name at all annual meetings of stockholders of both corporations up to the present time.

Also, since December 21, 1937, John Sherwin and Francis M. Sherwin have received the dividends upon the shares of stock standing in their respective names.

During 1938 each of the purchasers received $41,125 in dividends upon the stock referred to above. They paid the entire amount of the dividends over to the Mid-Continent Securities Co. $30,680.92 being in payment of interest due from each and $10,444.08 being credited to them upon the principal of their indebtedness.

In subsequent years at least 50 percent of the dividends received by the purchasers upon their shares of stock have been paid to the seller of the stock in payment of interest upon their obligations and the excess has been credited to them on the principal of their indebtedness.

In its income tax return for 1937 the Mid-Continent Securities Co. deducted from gross income as a loss upon the 5,357.74 shares of Midland Bank stock the sum of $1,434,998.76. It also included $960,645.69 in its gross income as a gain upon the sales made to John Sherwin and Francis M. Sherwin of Richman Bros. Co. stock and Valley Mould & Iron Corporation stock and reported a net loss for 1937 of $170,153.55.

In its income tax return for 1938 the Mid-Continent Securities Co. reported the receipt of interest from John Sherwin and Francis M. Sherwin in the aggregate amount of $61,361.84. It did not, however, include in its gross income the $82,250 dividends upon the shares of stock referred to above which were received by John Sherwin and Francis M. Sherwin. In the determination of the deficiency for 1938 the respondent has included in the company's gross income, in

addition to the amounts returned as interest, the dividends of $82,250 received by John Sherwin and Francis M. Sherwin, and has refused the company a dividends paid credit of $82,250 upon those shares upon the ground that they were preferential dividends.

In their income tax returns for 1938 John Sherwin and Francis M. Sherwin each reported the receipt of dividends upon the shares of stock above referred to standing in their respective names and deducted from gross income the amount of interest paid to the Mid-Continent Securities Co. in that year upon their obligations to that company.

The parties have stipulated that "The issues presented do not involve any question of fraud or tax evasion on the part of any of the tax-payers."

The crucial point to be decided in these proceedings is whether the sale of the shares claimed to have been made by the Mid-Continent Securities Co. to John Sherwin and Francis M. Sherwin on December 20, 1937, may be "recognized for income tax purposes." The respondent contends that they may not by reason of the fact that the company is a personal holding company and that each of the alleged purchasers of the stock, together with their families, had a 50 percent interest in the stock of the company. On brief the respondent states: "It is the position of respondent that the transaction was not in substance a sale, but was merely a device for the petitioners to escape income tax consequences." He further states: "The various steps taken by the petitioners were anticipatory arrangements entered into for the purpose of avoiding taxation."

There can be no question but that the alleged sale by the Mid-Continent Securities Co. of 27,000 shares of Richman Bros. Co. stock and 5,000 shares of Valley Mould & Iron Corporation stock was a sale under the Uniform Sales Act of the State of Ohio. The respondent does not contend otherwise. By reason of the contracts entered into between the company and the purchasers the ownership of the shares was transferred from the company to John Sherwin and Francis M. Sherwin. They paid a portion of the purchase price in cash and obligated themselves to pay the balance of the purchase price on or before December 1, 1942, with interest at 4 percent per annum. The shares of stock were actually transferred to their names and thereafter they received the dividends upon the shares and exercised all voting rights with respect to the stock. The provision of the contract of sale by which the buyer might be relieved from the payment of the balance of the purchase price by forfeiting all payments made thereunder within a given period does not vitiate the contract of sale. See *Paulson* v. *Weeks*, 80 Or. 468; 157 Pac. 590; *William M. Davey*, 30 B. T. A. 837; *James H. Torrens*, 31 B. T. A. 787; *Resthaven Memorial Cemetery, Inc.*, 43 B. T. A. 683.

We do not doubt that the contracts for the sale of the shares of stock were entered into on December 20, 1937, with an object of reducing taxes—if not for the year 1937, for subsequent years. The company had a very large paper profit on its holdings of Richman Bros. Co. stock and Valley Mould & Iron Corporation stock. It foresaw that if it could sell those shares in 1937 and realize these profits it would not have to pay a tax for 1937, since that profit would merely offset a part of the loss sustained by it upon its Midland Bank stock. It was conceived that if John Sherwin and Francis M. Sherwin acquired the shares of stock from the company in 1937 at the stipulated fair market price of $33 per share for the Richman Bros. Co. stock and $20 per share for the Valley Mould & Iron Corporation stock they could in a subsequent year, if desired, sell those shares and the gain or loss would be computed upon the purchase price; whereas if those shares of stock were sold by the company after 1937 it might realize a very large profit which would be subject to income tax.

A taxpayer has a right to decrease the amount of his taxes and to avoid them *in toto* by lawful methods. *United States* v. *Isham*, 17 Wall. 496, 506; *Gregory* v. *Helvering*, 293 U. S. 465; *Johnson* v. *Commissioner* (C. C. A., 2d Cir.), 86 Fed. (2d) 710.

The respondent argues, however, that "where evasion or avoidance of taxes is the intent and purpose of a transaction the forms used for its accomplishment will be scrutinized. *Morsman* v. *Commissioner* [90 Fed. (2d) 18]", citing *Continental Oil Co.* v. *Jones* (C. C. A., 10th Cir.), 113 Fed. (2d) 557.

It should be noted, however, that the parties have stipulated that the issues presented by these proceedings "do not involve any question of fraud or tax evasion on the part of any of the taxpayers."

The facts are that the company saw an opportunity to realize large profits upon the sales of a portion of its holdings on Richman Bros. Co. stock and Valley Mould & Iron Corporation stock without having to pay an income tax upon such profits. In our opinion this was a legitimate business purpose.

In an attempt to show that the sales of stock made by the company to its two principal stockholders on December 20, 1937, were in good faith, the petitioners have submitted evidence to the effect that before the sales were made the matter was discussed by John Sherwin with the revenue agent in charge at Cleveland, Ohio, and that he expressed the opinion that there was no provision of the law or the regulations which would raise any question as to the bona fide character of such a transaction, that is, provided the stock was sold at its fair market value. The respondent submits that any opinion expressed by the revenue agent in charge is immaterial to these proceedings. We agree. Whether the revenue agent correctly advised John Sherwin is beside the point.

The law is well settled, however, that transactions between a corporation and its stockholders are usually to be given full faith and credit. Thus, in *Continental Oil Co.* v. *Jones, supra*, the court said:

Ordinarily a corporation and its single stockholder or multiple stockholders are deemed separate entities, and generally that separateness is preserved when dealing with matters relating to taxes. *Klein* v. *Board of Supervisors*, 282 U. S. 19 * * * *Dalton* v. *Bowers*, 287 U. S. 404 * * * *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435 * * *. But extraordinary circumstances sometimes require the disregard of such separateness of entity in the solution of tax problems. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 300; * * *

Under section 24 (a) of the Revenue Act of 1934, as amended by section 301 of the Revenue Act of 1937, there is a limitation upon the deduction of losses from sales or exchanges of property. But that limitation does not refer to gains from the sale of property. The Mid-Continent Securities Co. made an enormous profit from the sale of shares of stock to John Sherwin and Francis M. Sherwin. Clearly the limitation with respect to the deduction of losses from sales or exchange of property was never intended to limit the taxation of the gains.

From a consideration of the entire record we are of the opinion that the respondent erred in failing to recognize the *bona fides* of the sales of shares of stock made by the Mid-Continent Securities Co. to John Sherwin and Francis M. Sherwin on December 20, 1937. In our opinion John Sherwin and Francis M. Sherwin are taxable upon the dividends received by them in 1938 upon the shares of stock acquired by them from the company, as contended by them. They are also entitled to deduct from gross income the interest paid by each in 1938 upon their obligations to the company. The company, on the other hand, is liable to income tax upon the interest received by it from John Sherwin and Francis M. Sherwin, as it contends, but is not liable to tax upon the dividends received upon shares of stock of the Richman Bros. Co. and Valley Mould & Iron Corporation standing in the names of John Sherwin and Francis M. Sherwin and received by those individuals in 1938.

*Decisions will be entered under Rule 50.*