Nov. Term,

THE EVANSVILLE, INDIANAPOLIS, AND CLEVELAND STRAIGHT
LINE RAILROAD COMPANY *v.* MEEDS.

1858.

| THE EVANS- | | |
|---|---|---|
| VILLE, &C., | 11 | 273 |
| RAILRO'D CO. | 141 | 344 |
| v. | 11 | 273 |
| MEEDS. | 171 | 577 |

The terms of a written instrument must be understood in their plain, ordinary
popular sense, unless they have, generally, in respect to the subject-matter,
acquired a peculiar sense, distinct from the popular sense; or unless the
context shows that in the particular instance, in order to effectuate the im-
mediate intention of the parties, they must be understood in some other and
peculiar sense.

APPEAL from the *Davies* Circuit Court.

Wednesday,
December 8.

DAVISON, J.—The railroad company sued *Meeds* upon a
note in writing, in this form:

"We, the undersigned, residents of *Davies* county, *In-
diana*, subscribe to the capital stock of the *Evansville, In-
dianapolis, and Cleveland Straight Line Railroad Company*,
the number of shares, of 50 dollars each, attached to our
names, severally, payable in cash or in lands, as below de-
scribed, under the by-laws of the company and the laws of
the state of *Indiana;* providing said road is permanently
located two miles east of the court-house in *Washington.
April* 29, 1854."

To this note, the defendant subscribed his name, and
opposite thereto annexed "four shares, 200 dollars."

It is averred that the company's board of directors, at
their session on the 12th of *May*, 1854, by resolve, required
10 per cent. of all cash subscriptions to the capital stock
of said company, to be paid each ninety days thereafter,
of which the defendant had due notice; that the plaintiffs
have complied with all the conditions of the subscription
on their part to be performed; and that the subscription
remains due and unpaid, &c.

Defendant's answer contains four paragraphs. As the
third, and the plaintiffs' reply thereto, raise the only ques-
tion to be settled in the case, the other paragraphs and re-
plies will not be further noticed.

The third paragraph alleges "that, at the time of sub-
scribing the stock, &c., it was agreed, and made a part of
the subscription, that said railroad should be permanently

VOL. XI.—18

Nov. Term,
1858.

The Evans-
ville, &c.,
Railro'd Co.
v.
Meeds.

located two miles east of the court-house in the town of *Washington*, meaning *Washington*, in *Davies* county, *Indiana.*" And defendant avers that the railroad is located permanently three miles east of said court-house—wherefore, he says that the consideration of the subscription has failed, &c.

To this, the plaintiffs replied, "That the subscription was made upon the condition that the railroad should be permanently located two miles east of the court-house in the town of *Washington*, meaning not less than two miles east of said court-house. And the plaintiffs say that in fact the railroad is permanently located at a distance not less than two miles east of the court-house in said town, agreeably to the true intent and meaning of the subscription and its condition; and that at the time the defendant subscribed, the company had in contemplation the permanent location of the road upon several lines—one, among others, through the town of *Washington*—and the defendant being anxious and desirous that said road should not be located permanently through said town, but should be permanently located at least two miles east of said court-house, executed the subscription with the condition," &c.

Demurrer to the reply sustained; and the plaintiffs, refusing to amend the same, final judgment was given for the defendant.

The solution of the inquiry presented by the record, depends upon the construction to be given to the words "two miles east of the court-house."

It has been said that "the terms of every written instrument are to be understood in their plain, ordinary, and popular sense, unless they have, generally, in respect to the subject-matter, as, by the known usages of trade, or the like, acquired a peculiar sense, distinct from the popular sense of the same words; or unless the context evidently points out that, in the particular instance, and in order to effectuate the immediate intention of the parties, they must be understood in some other and peculiar sense." 1 Greenl. Ev. § 278.—1 Phil. Ev. p. 419.

This, as a rule of construction, seems to be correct;

and when applied to the words in question, at once shows that they themselves, in their ordinary and popular import, plainly indicate an intent that the road should be permanently located just two miles east of the court-house. They express an engagement which, for aught that appears, the plaintiffs could have fulfilled in accordance with a strict interpretation of the terms used. Hence, we are not inclined to allow the construction set up in the reply. The subscription is not ambiguous; and the rule is well settled that a written contract containing no ambiguity, cannot be explained by parol evidence. 5 Blackf. 296.

But suppose the case rested upon the assumption that the terms used in the contract involve a doubt as to their true interpretation; still the reply would be defective, because it points to no fact or circumstance calculated, in any degree, to explain the intent of the parties. It simply avers that the defendant was anxious and desirous that the road should be permanently located at least two miles east of the court-house. But such desire may or may not be consistent with the intent of the instrument. 1 Greenl. § 282 *et seq.*

*Per Curiam.*—The judgment is affirmed with costs.

*O. H. Smith*, for the appellants.

*R. A. Clements*, for the appellee.