#### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1873, IN THE FIFTY-EIGHTH YEAR OF THE STATE.

### BRUCE v. SMITH.

PLEADING.—*Contract.—Performance.*—A complaint to recover the price of corporation stock sold averred, " that in full performance and execution of said contract on the part of the plaintiff, he delivered to the defendant a cer-tificate of stock for the shares of stock," etc., " which certificate the defendant received and accepted as a full performance of the said contract on the part of the plaintiff, but defendant has failed and refused to pay," etc.

*Held,* that this averment was not shown to be untrue because the certificate of stock set out showed that the stock was transferable only on the books of the company.

*Held,* also, that the fact that the legal title to the stock did not pass to the defend-ant by the delivery to him of the certificate and the acceptance thereof by him, in no manner showed the allegation that it was thus delivered and accepted by the defendant as a full performance of the contract on the part of the plaintiff to be untrue. The delivery of the certificate to the defendant and the acceptance by him as stated in the pleading vested the equitable title to the stock in the defendant; and if he accepted that equitable title as aver-red in the pleading as a full performance of the contract on the part of the plaintiff, he could not object that the plaintiff had not performed the contract on his part.

SAME.—One paragraph of the complaint averred that the plaintiff contracted and agreed with the defendant to sell him certain shares of stock, etc., and the defendant in consideration therefor undertook and expressly agreed with the plaintiff to pay him, etc., and that the plaintiff offered to execute and perform said contract, and to transfer said stock, and had been ready and

Bruce *v.* Smith.

willing at all times to perform said contract, but the defendant failed and refused, etc.   Another paragraph varied the averment thus:   " And the plaintiff then and there delivered to defendant the certificate of stock held and owned by him for said two shares of stock, which defendant accepted, and the plaintiff then and there offered to transfer the said shares of stock to defendant, and defendant refused to pay," etc.

*Held,* that each paragraph alleged a complete agreement to sell on the part of the plaintiff and to pay on the part of the defendant; the two minds met; the contract was not nude, for the agreement of the one was the consideration for the agreement of the other.

*Held,* also, that the contract set up was executory, no time having been fixed for its performance, and that the law would imply that it was to be performed immediately or within a reasonable time.

*Held,* also, that the contract did not pass any title to the stock, but it was a valid contract, which either party could enforce, he being in no default himself.

PRACTICE.—*Setting Aside Submission.*—There may be circumstances that would justify the court in setting aside a submission of a cause for trial upon the application of the plaintiff after the evidence has been adduced and the argument has been heard; and, the record not showing for what cause the submission was set aside, this court will presume some valid reason existed.

SAME.—*Appeal.*—The fact that the record on appeal to the Supreme Court shows that the appellant has paid the costs adjudged against him below does not prevent his prosecution of the appeal.

From the Randolph Circuit Court.

*E. L. Watson* and *L. J. Monks,* for appellant.

*J. Smith,* for appellee.

WORDEN, J.—This was an action by the appellant against the appellee.   The cause was once put at issue and submitted to the court for trial, and after the evidence had been adduced and argument had, the submission was withdrawn on the application of the plaintiff, on his payment of the costs.   The record states that the defendant excepted to this action of the court, but no bill of exceptions was filed, nor does it appear otherwise upon what ground the submission was set aside.

The plaintiff then amended the third and fourth paragraphs of his complaint, and also filed an additional paragraph, being the fifth.

Demurrers were severally sustained to each of these par-

Bruce *v.* Smith.

agraphs for want of sufficient facts, and the plaintiff excepted. The plaintiff dismissed the first and second paragraphs of his complaint, and, the demurrers being sustained as to all the others, there was final judgment for the defendant.

The appellant assigns as error the sustaining of the demurrers to the third, fourth, and fifth paragraphs of his complaint. The appellee assigns, by way of cross error, the setting aside of the submission of the cause.

The third, fourth, and fifth paragraphs of the complaint are as follow :

" 3. George W. Bruce, further complaining of the said defendant, Jeremiah Smith, says that on the 5th day of March, 1870, he sold to defendant two shares of turnpike stock in the Winchester and Union City Turnpike Company, each share being for the sum of twenty-five dollars, for which the defendant then and there agreed to pay the plaintiff twenty-five dollars ; and in full performance and execution of said contract on the part of the plaintiff, he then and there delivered to the defendant a certificate of stock for the said two shares of stock, a copy of which said certificate is filed herewith and made a part hereof, and marked ' Exhibit A,' which said certificate the defendant received and accepted as a full performance of the said contract on the part of the plaintiff ; but he says defendant has failed and refused to pay said twenty-five dollars or any part thereof ; wherefore the plaintiff demands judgment for forty dollars.

" 4. The plaintiff, further complaining of the defendant, says, that on the 5th day of March, 1870, he contracted and agreed with the defendant to sell him two shares of turnpike stock in the Winchester and Union City Turnpike Co., each share being in the sum of twenty-five dollars, and the defendant in consideration therefor undertook and expressly agreed with the plaintiff to pay him twenty-five dollars ; and the plaintiff then and there offered to execute and perform said contract and to transfer said stock, and has been ready and willing at all times to perform said contract ; but defendant wholly failed and refused to comply with his contract,

in this, that he has wholly failed and refused to pay the said twenty-five dollars or any part thereof, whereby the plaintiff has been damaged twenty-five dollars, for which he demands judgment.

"5. The plaintiff, further complaining of the defendant, says that on the 5th day of March, 1870, he sold to the defendant, Jeremiah Smith, two shares of turnpike stock in the Winchester and Union City Turnpike Company, each share being for twenty-five dollars, for which defendant then and there agreed to pay plaintiff twenty-five dollars; and the plaintiff then and there delivered to defendant the certificate of stock held and owned by him for said two shares of stock, a copy of which is filed herewith and marked 'Exhibit A,' which defendant accepted, and the plaintiff then and there offered to transfer the said two shares of stock to defendant, and defendant refused to pay the said price of twenty-five dollars or any part thereof; wherefore the plaintiff demands judgment for fifty dollars."

A copy of the certificate of stock mentioned in the third and fifth paragraphs is set out, but it need not be here transcribed or noticed, further than to say that it contains the following statement, viz.: "This stock is transferable only on the books of the company as provided in the by-laws."

The appellee claims that the third paragraph of the complaint is bad, for the reason that a material averment thereof is shown, by the pleading itself, to have been untrue, and therefore not well pleaded. The averment alluded to is, that, "in full performance and execution of said contract on the part of the plaintiff, he then and there delivered to the defendant a certificate of stock for the said two shares of stock, * * * which said certificate the defendant received and accepted as a full performance of the said contract on the part of the plaintiff." This averment, it is claimed, was shown to have been untrue, because the certificate set out shows that the stock was transferable only on the books of the company. This objection to the paragraph, in our opinion, is destitute

of any foundation.   The transfer of the  stock  certificate to the defendant vested in  him the equitable  title to the stock. Upon this point we  quote  the  following  passage  from  the opinion of the court as delivered by Mr. Justice STORY, in the case of *Black* v. *Zacharie & Co.*, 3 How. 483–513 :

" It is true that the charters of the Carrollton Bank and of the Gas Light and Banking  Company provide that no trans- fer  of  the  stock  of these  corporations  shall be  valid  or effectual until such transfers shall be  entered  or  registered in  a book or books to be kept for  that  purpose  by the cor- poration.    But this is manifestly a  regulation  designed for the security of the bank  itself, and of third  persons  taking transfers of the stock  without notice of any prior equitable transfer.    It relates to the transfer of the legal title, and not of any equitable interest in  the  stock  subordinate  to  that title.   In the case of *The  Union  Bank  of  Georgetown* v. *Laird*, 2  Wheat.  390,  this  court  took  notice  of  the  distinction between the legal and equitable title in  cases  of  bank-stock, where  the  charter  of  the  bank  had  provided  for the mode of transfer.    The general construction  which  has  been put upon the charters of other banks  containing  similar  provi- sions as to the transfer of their stock, is, that the provisions are designed solely for the  safety  and  security of the bank itself, and of purchasers without notice; and that as between vendor  and  vendee  a  transfer,  not  in conformity  to such provisions, is good to pass the equitable title and divest the vendor of all interest in the stock.   Such  are  the  decisions in the cases of *The Bank  of  Utica* v. *Smalley*, 2 Cow.  777, 778; *Gilbert*  v. *Manchester  Iron  Co.*, 11 Wend. 628;  *Com- mercial  Bank  of  Buffalo*  v. *Kortright*, 22 Wend.  362; *Quiner* v. *The Marblehead Social Ins. Co.*, 10 Mass. 476; and *Sargent* v. *Franklin  Insurance  Co.*, 8 Pick. 90."

The fact that the legal title to the  stock  did  not  pass to the defendant by the delivery to him  and the acceptance by him of the stock certificate  in no  manner shows the allega- tion that it was thus delivered and  accepted ·by the defend- ant as a full performance of the  contract on the part of the

plaintiff to be untrue.  The delivery of the certificate to the defendant and the acceptance by him as stated in  the pleading, as before observed, vested the equitable title to the stock in the defendant ; and if he accepted that equitable title, as averred in the pleading, as a full  performance of the contract on the part of the  plaintiff, he  cannot  object that the plaintiff has not performed the  contract on  his part.   Conceding that but for the alleged  acceptance of the stock  certificate by the defendant as a full  performance of the contract on the part  of the  plaintiff, the  plaintiff would  have been bound to convey to the defendant the legal title to the stock ; still the acceptance by the latter of the equitable title as a full  compliance  with the  plaintiff's obligation, was a waiver of any other performance on the part of the latter.

In *Williams* v. *The Bank  of  the  United  States*, 2 Pet. 96, it was held that " if a party  to to a contract, who is entitled to the benefit of a condition, upon the performance of which his responsibility is to arise, dispense  with  it, or by any act of his own prevent  the  performance, the  opposite party is excused from proving a strict compliance with the conditions." See, also, *Richards* v. *Carl*, 1 Blackf. 312.

We see no well founded objection to the paragraph under consideration, and are of  opinion  that the demurrer thereto should have been overruled.

The objection to the  fourth and  fifth  paragraphs, as we understand the  brief of the  appellee, is, that they set up naked pacts, not binding on  the  parties.   In the appellee's brief it is said: "The fourth paragraph contains only a naked pact and avers a readiness to perform his part of the fact by the plaintiff, and a refusal on the  part of the  defendant to perform his part.   It is so clearly bad that I think it unnecessary to argue it before this court.  *  *  *  The statement of facts set out in this  paragraph can  be seen in their full want of force by  instancing a case of a  merchant at his counter.   A customer steps in and says, ' I want ten yards of calico.'   The merchant throws  down a bolt upon the counter and says, ' You may have this at ten cents a

yard.' The customer looks at it and says, 'I'll give you ten cents a yard for ten yards.' 'Well,' says the merchant, seizing his yardstick, 'I am ready to measure and cut ·off ten yards and offer to do it.' But the customer simply walks away and the merchant puts his bolt of calico back on the shelf. The merchant then goes to a justice of the peace and sues the man for· the dollar for the ten yards of calico. That's the 4th paragraph."

We have set out this portion of the brief of the appellee in order to develop fully the objection urged to the fourth paragraph. The paragraph, it will be seen, alleges a complete agreement to sell the stock on the part of the plaintiff, and to pay the twenty-five dollars therefor on the part of the defendant. Here is a perfect contract. The two minds met. The contract was not nude, for the agreement of the one was the consideration for the agreement of the other. It often happens, where there are mutual promises, that the promise of each is the consideration of the promise of the other. *Wilson* v. *Ray*, 13 Ind. 1–6.

The case stated in the paragraph in question, and also the one put by the appellee of the merchant and his customer for illustration, cannot be distinguished in principle from the one put by Blackstone, as follows: "If a man agrees with another for goods at a certain price, he may not carry them away before he hath paid for them ; for it is no sale without payment, unless the contrary be expressly agreed. And therefore, if the vendor says the price of a beast is four pounds, and the vendee says he will give four pounds, the bargain is struck; and they neither of them are at liberty to be off, provided immediate possession be tendered by the other side. But if neither the money be paid, nor the goods delivered, nor tender made, nor any subsequent agreement[1] be entered into, it is no contract, and the owner may dispose of the goods as he pleases." 2 Bl. Com. 447, Sharswood's ed.

Sharswood, in a note to the passage above quoted, speaking of the sentence in the extract, "it is no contract," says :

" The authorities cited do not support this sentence.  It is true that there is no right in the vendee to recover possession of the goods without payment or tender of the price ; but that is another thing from saying there is no contract."

We think the passage in the text quoted, " it is no contract," taken in connection with the context, is not to be construed literally, but that the author meant thereby simply that in such case there was no such contract as would amount to a sale, or perhaps no such contract as would authorize either party to sue thereon without performance or tender of performance on his own part.  If without performance or a tender of performance, there is really no contract, how can it be that if the vendor says the price of the beast is four pounds, and the vendee. says that he will give four pounds, the bargain is struck, and that neither party is at liberty to be off, provided immediate possession be tendered by the other side?  The performance of a contract or the tender of performance is no part of the contract.  The making of a contract is one thing, but the performance thereof, or the tender of performance, is another and quite different thing.  The contract set up in the paragraph in question is an executory one, by which the plaintiff agreed to sell to the defendant the shares of the stock, and the defendant agreed to pay him therefor the sum of twenty-five dollars.  No time was fixed for the performance ; the law will imply therefore that it was to be performed immediately, or perhaps within a reasonable time.  Had a future day been agreed upon for the performance of the contract on each side, there could have been no doubt as to its validity, or the right of either party to enforce it, he having done all he was required to do on his part.  The fact that no time was agreed upon for performance does not change the character of the contract.

The contract did not pass any title to the stock, but it was nevertheless a valid contract, and one which either party can enforce, he having been in no default himself.  Does the paragraph show that the plaintiff has done all the law

requires of him, in order to enable him to enforce the contract against the defendant? It alleges that the plaintiff "then and there offered to execute and perform said contract and to transfer said stock, and has been ready and willing at all times to perform said contract, but defendant wholly failed and refused to comply with his contract," etc. This allegation is amply sufficient. It is said that "in the case of concurrent consideration, that is, where the acts to be done by each party are to occur at the same period, neither party can sue on the contract, without showing that he was ready and willing to perform his part thereof," etc. Chit. Con., 10 Am. ed., 809. Here is not only a readiness and a willingness to perform shown on the part of the plaintiff, but an offer to perform. In note "*q*," 2 Pars. Con. 528, it is said: "There is also a third sort of covenants, which are mutual conditions to be performed at the same time; and in these, if one party was ready, and offered to perform his part, he who was ready and offered has fulfilled his engagement, and may maintain an action for the default of the other; though it is not certain that either is obliged to do the first act." We quote the following passage from the opinion of the court in the case of *Smith* v. *Lewis*, 26 Conn. 110–119: "Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of mutual and concurrent promises. The word 'tender,' as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the

latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender in the sense in which those terms are used in reference to the kind of agreements which we are now considering. It is not an absolute, unconditional offer to do or transfer anything at all events, but is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement." See, also, the cases of *Irvin* v. *Gregory*, 13 Gray, 215, and *Lynch* v. *Jennings*, 43 Ind. 276.

What we have said sufficiently indicates that, in our opinion, the fourth and fifth paragraphs of the complaint were good. The demurrers to them, as well as to the third paragraph, should have been overruled.

What should be the rule of damages for the breach of contract alleged in either of the paragraphs, is a question upon which we intimate no opinion, as it does not arise in the record.

With regard to the cross error assigned, we are of opinion that there may be circumstances that would justify the court in setting aside a submission on the application of the plaintiff, after the evidence has been adduced and argument heard. There is nothing in the record showing on what ground the submission was set aside; we will therefore presume that some valid ground existed.

It is claimed by the appellee that this appeal should not be sustained, because the record shows that the appellant has paid the costs, which were adjudged against him below. We think, however, that the payment of the costs by him does not prevent his prosecution of the appeal.

For the error in sustaining the demurrers to the third, fourth, and fifth paragraphs of the complaint, the judgment below must be reversed.

The judgment below is reversed, with costs, and the cause remanded to the court below, for further proceedings in accordance with this opinion.