## UNITED STATES. *v.* CORWIN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT · OF TEXAS.

No. 123.   Argued December 12, 1888. — Decided February 4, 1889.

In an action against the sureties on a contractor's bond to the United States to recover damages suffered by reason of the nonfulfilment of the contract, the burden of proof is on the United States to show a demand upon the contractor for performance, and his failure and refusal to perform; and a statement of such nonperformance, demand, failure and refusal, made by an officer of the government in the line of his official duty in reporting them to his official superior, is not legal evidence of any of those facts.

AT LAW, on a contract. Judgment for defendants. Plaintiffs sued out this writ of error. The case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for plaintiffs in error.

No appearance for defendants in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

On the 17th of November, 1883, the plaintiffs in error brought suit in the Circuit Court of the United States for the Western District of Texas against the defendants in error, Dennis Corwin and John Cardwell, as sureties in two bonds, one in the penal sum of $3000, and the other, $2150, given by one Edwin P. Phillips, to secure the faithful performance of two contracts, dated May 20, 1881, between Phillips and these plaintiffs. Phillips being without the jurisdiction of that court, was not sued. By one of these contracts Phillips agreed to furnish to the quartermaster's department, United States army, at the military station of San Antonio, Texas, "such quantity as may be required, not exceeding in all 1,000,000 pounds, of good merchantable oats," at a stipulated price; "the said oats to be furnished and delivered as may be required for the wants of the said station, between the 1st day of July, 1881, and the 13th day of July, 1882, in such quantities and at such times as the receiving officer may require;" and by the second contract he agreed to furnish to the same authorities, at the same place, such quantity as may be required, not exceeding in all 1,000,000 pounds, of good merchantable corn, at a stipulated price, between July 1, 1881, and June 30, 1882, upon like terms, as to quantity and time of delivery, as in the case of the oats.

The petition, after setting out the material parts of both of these contracts, and also of the bonds, alleged that Phillips "wholly failed, refused and neglected to carry out any one or all of his stipulations in said agreements;" that, as a result of such failure on his part, the plaintiffs were compelled to, and did, go into the open market and purchase large amounts of both kinds of grain at a much higher price than was stipulated in said contracts; and that plaintiffs were thus subjected to a loss of $11,564.55, for which sum, or so much thereof as

did not exceed the amounts named as penalties in the bonds, together with interest and costs, etc., they prayed judgment.

Each of the defendants below demurred to the petition, and, at the same time, traversed its allegations.

August 24, 1884, a formal stipulation was filed, waiving a jury and submitting all matters of law and fa; to the court. On the following day an amendment to the petition was filed, alleging that on the 8th day of July, 1881, demand was made on Phillips, under the contract, for the delivery of 150,000 pounds of corn and a like quantity of oats. Issue being joined, the United States introduced their evidence, which was wholly documentary, and consisted of transcripts of various original papers deposited in the Treasury Department, and which, it was claimed, was relevant to the case. The defendants in error offered no evidence at all. On the 3d of September, 1885, the court overruled the demurrers to the petition, and upon consideration of the case upon its merits rendered judgment in favor of the defendants in error, upon the ground that, under the contracts sued on, a demand upon Phillips for their performance was a condition precedent to the right of action on the bonds, and that there had been no legal evidence submitted showing that any demand ever had been made. From this judgment the United States sued out the writ of error which brings the case here.

The burden of proof was upon the United States to show that a demand had been made upon Phillips for the performance of each of his said agreements, and to show his failure and refusal to so perform them.

The evidence submitted by the United States to establish this demand and refusal, consisted of several letters, of different dates, written by the quartermaster in charge of the depot at San Antonio to the Chief Quartermaster of the Department of Texas, for authority to purchase certain stated amounts of oats in open market, because (as was alleged therein) Phillips had failed to make deliveries under his contract; all of which letters were referred by the last-named officer to the Adjutant General, with a recommendation that such authority be granted. The Adjutant General approved these requests, and

the purchases were accordingly made. These letters were substantially alike, differing only as to dates and amounts of oats desired, one of which, including indorsements, is as follows:

"Office Depot Quartermaster, U. S. Army,
"San Antonio, Texas, Aug. 2d, 1881.
"Chief Quartermaster, Department of Texas,
"San Antonio.

"Sir: I respectfully request authority to purchase 40,000 lbs. of oats, in open market, the contractor, Mr. E. P. Phillips, having failed to make deliveries under his contract.

"Very respectfully, your obedient servant,
"L. E. CAMPBELL,
"Capt. & A. Q. M., U. S. A., Depot Q'r M'r."

(First indorsement.)

"H'dq'rs, Dep't of Texas,
"Office of Chief Quartermaster,
"San Antonio, Texas, Aug. 2d, 1881.

"Respectfully referred to the Adj't General, Department of Texas, recommending approval of this request in accordance with article 1 of the contract. Mr. Phillips, after having had due notice by requisition from the depot quartermaster to furnish certain quantities of grain, has so far failed to make any delivery, and the amount of grain for which authority is here requested to purchase in open market is absolutely needed for issue to the public and private animals pertaining to this station, and the San Antonio depot, and will last about ten days.
"(Sig'd)                          "WM. B. HUGHES,
"Major & Chief Q'r'master."

(Second indorsement.)

"Headquarters Department of Texas,
"San Antonio, Aug. 3, 1881.

"Respectfully returned by the Commanding General to the Chief Quartermaster of the department approved.
"(S'g'd)                          "THOMAS M. VINCENT,
"Adjutant General."

(Third indorsement.)

"Headq'rs, Dep't of Texas,
  "Office of Chief Quartermaster,
      "San Antonio, Texas, August 3, '81.

"Respectfully referred to the Depot Quartermaster, San Antonio, inviting attention to preceding indorsement.

"(S'g'd)                    "W. B. HUGHES,
                    ' Major & Chief Quartermaster."

We agree with the Circuit Court that the transcript does not present any legal evidence of a demand upon the contractor, nor of any such default on his part, as to give the United States a cause of action against him and his sureties. The order of the receiving officer at San Antonio requiring the contractor to deliver the oats in the quantity stated and at the time specified, should have been produced, or its non-production accounted for. The letters of the acting quartermaster, Captain Campbell, applying for authority to purchase oats, and the recommendation by Major Hughes that the application be granted, only prove the necessity and object for such purchase. The assertion by Major Hughes that the contractor, though duly notified by requisition, had failed to comply with his contract, is unsustained by any evidence of any kind. No such requisition can be found among the papers, nor is any reason given for its non-production. Neither is it shown, except by the bare assertion referred to, that the requisition ever reached the contractor.

It is contended by the counsel for the government, that this assertion, being in the official communication of the Chief Quartermaster of the Department of Texas, is itself sufficient and competent evidence of the fact. We do not think that the authorities cited support the proposition. They present applications in various instances of the well established rule that official reports and certificates made contemporaneously with the facts stated, and in the regular course of official duty, by an officer having personal knowledge of them, are admissible for the purpose of proving such facts. Manifestly the

design and meaning of this rule is not to convert incompetent and irrelevant evidence into competent and relevant evidence simply because it is contained in an official communication. Had the officer been testifying under oath, such an assertion would have been excluded as inadmissible, upon the ground that the statement itself implied the existence of primary and more original and explicit sources of information. *Clifton* v. *United States*, 4 How. 242, 247; 1 Taylor Ev. §§ 391, 394; 1 Greenl. Ev. §§ 82, 84. The courts hold this rule, which has been invoked, to be limited to only such statements in official documents as the officers are bound to make in the regular course of official duty. The statement of extraneous or independent circumstances, however naturally they may be deemed to have a place in the narrative, is no proof of such circumstances, and is, therefore, rejected. 1 Taylor Ev. § 705; *United States* v. *Buford*, 3 Pet. 12.

It results from what we have said that there was no evidence submitted showing a demand by the United States under the first contract, and a failure and refusal by Phillips to perform it. As to the contract for supplying corn, it is admitted by the United States that their evidence in support of their claim is not so strong as in the case of the contract for supplying oats. The only evidence touching the contract to supply corn was certain vouchers for corn purchased outside the contract, all dated in the latter part of the year 1881 and the early part of 1882. In the language of the counsel for plaintiffs in error, "we find no correspondence, nor any other form of documentary evidence, tending to show that the demand for performance required by the contract to supply corn had been made by the government."

The judgment of the Circuit Court is

*Affirmed.*