HAWORTH *v.* HUBBARD ET AL.

[No. 27,804.   Filed December 2, 1942.   Rehearing denied January 5, 1943.]

*Charles H. Foley,* of Martinsville, and *Sylvan W. Tackitt,* of Bloomington, for appellant.

*Louis B. Ewbank,* and *Kivett & Kivett,* all of Indianapolis, for appellees.

FANSLER, J.—The appellant was the plaintiff below. It is alleged in his complaint that on or about the 21st day of March, 1928, he purchased six shares of the preferred stock of the Forbes-Hubbard Lumber Company, an Indiana corporation, and paid therefor $600, the par value of the stock. At the time of and in consideration of the purchase of the stock, the appellees executed the following agreement in writing:

"Whereas, D. L. Hayworth of Martinsville, Indiana has this day purchased six shares of Preferred Stock of the Forbes Hubbard Lumber Company, Indianapolis, Indiana represented by certificate 216.

"In consideration of said purchase, the undersigned, Chas. A. Hubbard and H. C. Scearce and S. C. Kivett hereby agree and bind themselves to repurchase said stock any time after six month's notice, paying therefore the full par value, plus any earned and unpaid dividends.

"Witness our hands this 21st day of March, 1928."

On the 24th day of February, 1933, the appellant gave notice to the appellees that he desired that they repurchase the stock according to their agreement; that six months had elapsed and the appellees refused to repurchase. There are further allegations concerning dividends earned and unpaid. The appellees answered by general denial, and two affirmative paragraphs in which the sale of the stock and the execution of the repurchase agreement are admitted. It is further alleged in the answers that the appellant took the stock and received the full benefit thereof without exercising his right to have it repurchased until February 24, 1933; that during all of the time the stock continued to pay

dividends and was a good and safe investment and could have been sold for its par value plus earned and unpaid dividends, and that if the plaintiff had exercised his right to have the stock repurchased within three years, the defendants could have sold it without loss; that the plaintiff continued to retain the stock and collect the dividends; and that he is estopped from asserting his rights. A demurrer to the affirmative answers was overruled. The cause was submitted to the court for trial. There were special findings of facts and conclusions of law adverse to the plaintiff, and a judgment was rendered for the defendants. A motion for a new trial was overruled.

Error is assigned upon the overruling of the motion for a new trial and upon the conclusions of law, which conclusions of law are to the effect that the plaintiff is not entitled to recover.

In the special findings the court found that the allegations of the complaint are true; that at the time the stock was issued the corporation was in good financial condition and making profits, and paid dividends until 1932; that in February, 1933, because of the financial depression, the stock could not be sold for par; that the failure of the plaintiff to exercise his right to have the stock repurchased prior to February, 1933, was in no way due to the fault or failure of the defendants; that the plaintiff did not exercise his right to have the stock repurchased "within a reasonable time."

The trial court construed the words "any time," as used in the contract, to mean "within a reasonable time," and assumed that the question of what was a reasonable time was a question of fact to be determined from the evidence submitted.

It is everywhere agreed that words used in a contract are to be given their usual and common meaning

unless, from the entire contract and the subject-matter thereof, it is clear that some other meaning was intended. In *Grey* v. *Pearson* (1857), 6 H. L. C. 61, 106, Lord Wensleydale said: "I have been long and deeply impressed with the wisdom of the rule, now, I believe, universally adopted, at least in the Courts of Law in Westminster Hall, that in construing wills and indeed statutes, and all written instruments, the grammatical and ordinary sense of the words is to be adhered to, unless that would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument, in which case the grammatical and ordinary sense of the words may be modified, so as to avoid that absurdity and inconsistency, *but no further*." (Emphasis supplied.) The above quotation is cited with approval in Williston on Contracts, Rev. Ed., Vol. 3, § 618, p. 1777. In Restatement of the Law of Contracts, § 235, p. 320, it is said: ". . . the ordinary sense of words both singly and in collocation is adhered to unless doing so would lead to some absurdity, or repugnance or inconsistency with the rest of the instrument. In such cases, so far as is necessary to avoid that absurdity or inconsistency, but no further, the ordinary sense of words may be modified and rules of grammar disregarded." This principle seems settled beyond debate.

Webster, defining "any," says, among other things, "of an amount, quantity, number, time, extent: a. Great, unmeasured, or unlimited; up to whatever measure may be desired or needed; the whole . . . ." And again, "indicating a person, thing, etc., as one selected without . . . choice . . . ." It cannot reasonably be doubted that in ordinary understanding "any one" means any person indiscriminately and without limitation, and that "anywhere" means, as

Webster says, "at one place equally well with another," and that the right to do a thing at any time is taken to be a grant of time without limit. In *Kincaid* v. *Overshiner et al.* (1912), 171 Ill. App. 37, 42, the court said: "Defendants insist that at the time of the execution of the agreement by them the stock was worth par value and so continued until 1907, that the delay by plaintiff in demanding performance is unreasonable, that having taken the stock when it was at par value and holding it during two years or more while it continued at par, he should not be permitted to hold it more than five years at a time when the corporation had become insolvent and the stock worthless, and then force defendants to purchase it at par. It is too late now for defendants to undertake to seek a new agreement; they did not limit the time when performance should be demanded by plaintiff but agreed to purchase it *at any time*. The court cannot alter the terms or conditions of the agreement as made." Certiorari to the Supreme Court of Illinois was denied. See also *Grotte* v. *Rachman et al.* (1926), 114 Neb. 284, 207 N. W. 204.

The Supreme Court of Oregon, in *Paulson* v. *Weeks* (1916), 80 Ore. 468, 469, 473, 157 P. 590, 591, 592, Ann. Cas. 1918D, 741, 742, 743, considered a sale of stock with an agreement that, " 'if plaintiff should at any time thereafter become dissatisfied with the purchase,' " the defendant would repay the purchase money. It is recognized in the opinion that: "Primarily the word 'any' implies unlimited choice as to the particular unit, number or quantity . . . ." But it is said that the words "any time," when employed in agreements like the one then under consideration, are almost universally construed to mean a "reasonable time." The basis of the decision seems to have been that the demand to repurchase was not made within a reasonable time

after the purchaser became dissatisfied. It is noted that the contract does not provide that if the plaintiff should become dissastisfied, the defendant will at any time thereafter repay the purchase money. It did provide that, " 'if plaintiff should at any time thereafter become dissatisfied,' " the defendant would repay the money.

The Supreme Court of Massachusetts recognized such a distinction in *Armstrong* v. *Orler* (1915), 220 Mass. 112, 115, 116, 107 N. E. 392, 393, 394, when it said: "But the agreement found by the judge to have been made by the defendant was not an agreement to take back upon the plaintiff's being dissatisfied with the purchase, but was an absolute agreement that he 'would buy back from the plaintiff these stocks and bonds at any time he (the plaintiff) desires to return the same.' "

There is language in some of the cases to the effect that where no time for performance is specified in a contract it must be performed within a reasonable time, and that where the contract provides that it is to be performed within a reasonable time the effect is the same as though no time had been mentioned and the words "within a reasonable time" had been omitted. To say therefore that "any time" means "within a reasonable time," is to say that the words "any time" are to be given no effect whatever. Such a construction violates the fundamental rule which requires that all of the words in a contract be considered in determining its meaning. It has been said that the requirement that a contract be performed immediately requires performance within a reasonable time under the circumstances. But some courts have pointed out that in order to give effect to the word "immediately," it must be held to require performance more quickly than in the reasonable time which would

be required in the absence of the word "immediately." See 17 C. J. S., Contracts, § 358, p. 817. This is consistent with the requirement that words in a contract cannot be ignored.

Contracts for the purchase or sale of property are of such a nature that it is generally inconceivable that the parties intended that the privilege of exercising the right should be open forever, and so it is difficult to find a contract in which the words "any time" may be literally construed as granting a right in perpetuity. It is not because the words themselves in their ordinary sense do not imply time unlimited, but because the subject-matter and the surrounding circumstances clearly indicate that some limitation was intended.

In 17 C. J. S., Contracts, §358, p. 817, *supra,* it is said: " '*At any time,*' as used in a contract in connection with the time of performance, is a relative and flexible term not susceptible of precise definition; its intendment in a particular case depends on the facts and circumstances." The language quoted fairly reflects the language of many of the cases in which the ordinary meaning of the words was limited because of the context in which they were used, but a careful reading of the cases reveals a clear understanding of the ordinary meaning of the words. In each case facts and circumstances were found indicating that they were not intended to have their ordinary meaning in the particular contract under consideration. It seems abundantly clear, however, on principle that departure from the ordinary meaning of the words used will be limited to that which is necessary to avoid absurdity or some repugnance or inconsistency.

Looking to the subject-matter of the contract, it will be found that it involved preferred stock of an Indiana

corporation. Such shares have preference over common stock, but are subject to the rights of creditors. In the event of liquidation or a dissolution of the corporation, holders of preferred shares are entitled to payment to the amount of the par value of the stock, plus unpaid dividends, before distribution of assets to the common stockholders. The preferred stock certificate here involved recites that it is issued in compliance with the laws of the State of Indiana; that the owners are entitled to receive, and the corporation is bound to pay, all dividends at the rate of 6 per cent. per annum, cumulative from the date of the certificate; that:

"This preferred stock may, by vote of the majority of the Board of Directors, be taken up for the purpose of reissuing or may be redeemed at any dividend period after two years from the date of this certificate, by said Company paying in cash to the holder thereof the sum of $100.00 per share and any or all earned or accumulated dividends.

"And said Company specially agrees and binds itself to either take up for the purpose of re-issung or redeem said stock by paying to the holder thereof in cash the full par value, together with accumulated dividends, within ten years from the date of this certificate."

Here, then, was a capital investment, bearing a fixed-rate of interest, by the terms of which the holder of the certificate might look forward to a return of his capital, with interest and nothing more, at some time in the future, fixed only by the life of the corporation or the will of its directors. The words "any time" need not be construed as indicating an unlimited time far beyond the statutory life of the corporation, but it does not lead to absurdity to assume that the parties intended that they would make it pos-

sible for the purchaser to recover his capital with interest if he so desired before it was obligatory upon the corporation to pay him. Such a construction of the meaning of the words is not repugnant to or inconsistent with the remaining language of the contract. Such an interpretation is consistent with the ordinary meaning of the words, and, under the well-settled rule above quoted, a departure from the ordinary meaning of the words, beyond what is necessary to avoid absurdity, repugnancy, or inconsistency, is not permitted. The Lord Chancellor, in *Grey* v. *Pearson, supra,* applying the rule, said (p. 78) : "But the testator declares, that if the grandson should die under the age of twenty-one years and without issue, it shall go over. It appears to me that that was not an irrational mode of disposing of the property. I should feel at a loss, indeed I should think it impossible, to hold that that could not be what the testator intended. And, therefore, independently of authority, I should feel myself bound to adhere to the strict meaning of the words, . . . ." To put it otherwise, unless it can be said that the ordinary meaning *could not* have been intended, it must be concluded that the ordinary meaning *was* intended. It may here be conceded that unlimited time was not intended, but unless it can be seen that the purchaser was not to have the right to demand the repurchase of the stock at any time within the life of the corporation, it must be concluded that the words "any time" were literally intended to mean at any time within that limitation at least.

In his complaint the appellant did not rely upon the stock having become worthless or unmarketable or upon dissatisfaction with his purchase. He stood squarely upon the literal words of the contract. The answers rely upon estoppel. They allege that the stock

always was and is worth par and accrued dividends, and that it was readily marketable at that figure at the time of the sale and at practically all of the time before the demand to repurchase was made. The defendants brought forward testimony supporting these allegations, and to the effect that the stock was worth par plus accrued dividends at the time of the trial. But this was not disputed by the appellant. It seems to be the theory of the appellees that, since there was a ready market for the stock at the price at which they agreed to repurchase it at the time the contract was made and for some time thereafter, the appellant was bound to demand the repurchase before the outside market failed. Such a contract, of course, would be of very little, if any, value. The fact that the issuing corporation had property largely in excess of its preferred stock obligations at all times as shown by the evidence, and that there was a ready market for the stock at the time it was purchased, lends support to the view that the purchaser may not have been concerned primarily about the ultimate value of the stock, but that, since the corporation was not obligated to do so, he desired to be assured that he could reconvert his investment into cash at any time. There is nothing in the contract or the surrounding circumstances to negative such an intention. It is not absurd or repugnant to or inconsistent with any of the provisions of the contract or the situation of the parties.

Having reached this conclusion, and the demand having been made for repurchase at a time within the contemplation of the parties as indicated by the contract, there was no issue of reasonableness as to the time in which the demand might be made, and the finding of fact in this respect may be ignored. This conclusion indicates that the demurrer to the affirmative para-

graphs of answer should have been sustained, but since there is no controversy concerning the material facts, and since the material facts found require a recovery by the plaintiff, the judgment is reversed, with instructions to restate the conclusions of law and enter judgment for the plaintiff for the par value of the stock and dividends due and unpaid to the date of judgment.

Shake, J., dissenting.

Richman, C. J., concurs in dissent.

### DISSENTING OPINION.

SHAKE, J.—I heartily agree with that part of the majority opinion wherein it is held that ordinarily the words "any time" import time without end. I cannot agree with the conclusion that as a matter of law, as distinguished from one of fact, the words "any time" as used in the contract before us mean in perpetuity unless limited by the life of the corporation, the preferred stock of which was the subject of the transaction. In the light of the modern decisions it is hardly proper to say that the words used in a contract will be given their generally accepted definition unless to do so would lead to absurdity, repugnancy, or inconsistency. The more recent cases hold that the language will be given its usual and generally accepted meaning unless it has, in respect to the subject-matter, acquired a peculiar sense or unless the context shows that it must be otherwise understood to effectuate the intention of the parties. *The Evansville, &c., Railro'd Co.* v. *Meeds* (1858), 11 Ind. 273. "The usual definition of a single word is not a conclusive test of the meaning to be attributed to it in the connection in which it is found; the sense in which the parties employed the word must be ascertained from an examination of the entire instrument, read in the light of the circumstances

surrounding its execution." See 12 Am. Jur., Contracts, § 247, p. 784, and numerous cases there cited including *Krause* v. *Board, etc.* (1904), 162 Ind. 278, 70 N. E. 264, 65 L. R. A. 111, 102 Am. St. Rep. 203, 1 Ann. Cas. 460.

While there does not appear to be any legal impediment to parties assuming obligations calling for perpetual performance, the cases that sustain such agreements relate to negative promises such as to forebear suit or to refrain from carrying on a business or a calling. The courts are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation. 1 Williston's Treatise on the Law of Contracts (Revised Edition 1936), § 38, p. 101. *Printing Co.* v. *Graphite Compendius Co.* (1910), 150 Mo. App. 383, 130 S. W. 836.

Looking to the circumstances surrounding the execution of the contract before us, we find that the life of the Forbes-Hubbard Lumber Company was limited to 50 years from its organization in 1920. Acts 1921, ch. 35, § 4, cl. h, § 4825, Burns' 1926. The preferred stock was a 10-year obligation, subject to reissue but redeemable after 2 years at the option of the company. The appellee Hubbard was president of the company which was engaged in a private business subject to all of the vicissitudes of a competitive, commercial enterprise. The company was subject to radical changes in management and, of course, might become insolvent or bankrupt. The parties were charged with knowledge that the law of this State imposes a limit of 10 years for bringing an action on a written contract for the payment of money. § 2-602, Burns' 1933, § 61, Baldwin's 1934. They were also bound to know that the contract created a chose in action, that it might involve their estates. *Hedgepeth* v. *Union Trust Co., Admr.*

(1924), 194 Ind. 616, 144 N. E. 142. They resided in the community where the corporation was engaged in business and knew each other well. It seems to me inconceivable that the parties had in mind that they were entering into an unending obligation. If they did not, the contract is indefinite and.it is not for this court to assume to make it definite by judicial construction. It is well settled that an executory contract which is indefinite as to the period for which it is to run will be treated as if it provided for a reasonable time. *Bruce* v. *Smith* (1873), 44 Ind. 1.

Notice within a reasonable time being a condition precedent to the right to maintain the action, the burden was on the appellant to plead and prove compliance therewith. *Schaefer* v. *Hines* (1914), 56 Ind. App. 17, 102 N. E. 838. *United States* v. *Corwin* (1889), 129 U. S. 381, 9 S. Ct. 318, 32 L. Ed. 710. Ordinarily, what amounts to a reasonable time is a question of fact although it may become one of law when the facts are not in dispute. *Pickel* v. *The Phenix Insurance Company, of Brooklyn* (1889), 119 Ind. 291, 21 N. E. 898. *Metropolitan Life Ins. Co.* v. *Frankel* (1915), 58 Ind. App. 115, 103 N. E. 501. A fact is not established by undisputed evidence, however, merely because the testimony of a witness in relation thereto is not directly controverted where such testimony is inconsistent with other facts and circumstances shown by the evidence. *De Lange* v. *Cones, Admr.* (1939), 215 Ind. 355, 19 N. E. (2d) 850. Where evidence, although uncontradicted, is equivocal in character and is fairly susceptible of two interpretations, one tending to support the claim of the plaintiff and the other that of the defendant, the court cannot determine the issue as a matter of law. *The Cincinnati, Indianapolis, St. Louis and Chicago R'y Co.* v. *Darling* (1892), 130 Ind. 376, 30 N. E. 416.

In my opinion the judgment should have been affirmed.

Richman, C. J., concurs in the dissenting opinion.

NOTE.—Reported in 44 N. E. (2d) 967, 144 A. L. R. 887.