**MODERN PHOTO OFFSET SUPPLY,**
Appellant (Plaintiff Below),

v.

**The WOODFIELD GROUP, Repro Image, Ltd. and Richard C. MacGill, Appellees (Defendants Below),**

and

**Richard C. MacGILL and The Woodfield Group, Inc., Counterclaimants,**

v.

**James B. HARMON, Chromagraphics, Inc. and Repro Image, Ltd., Cross–Defendants.**

No. 49A02–9504–CV–198.

Court of Appeals of Indiana.

April 12, 1996.

Rehearing Denied June 7, 1996.

Karl L. Mulvaney, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellant.

Andrew J. Detherage, Barnes & Thornburg, Indianapolis, for appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Modern Photo Offset Supply appeals from the summary judgment granted Richard MacGill discharging him from his liability as a guarantor for debts of The Woodfield Group, Inc.

We reverse and remand.

### FACTS

The Woodfield Group, Inc. was a printing company, with Richard C. MacGill as its president and sole shareholder. Modern Photo Offset Supply was a supplier of photographic and printing products. In September 1988, Woodfield applied to Modern Photo for credit to purchase various supplies, and credit was extended to Woodfield by Modern Photo.

In May 1993, a series of credit purchases by Woodfield began to cumulate with no corresponding payments. Modern Photo responded to Woodfield's increasing debt by seeking a personal guaranty from MacGill. On July 22, 1993, Modern Photo obtained from MacGill a "Personal Guarantee of Payment" on Woodfield's indebtedness of $150,-473.18; in return, Modern Photo agreed to continue extending credit to Woodfield.

Also in July 1993, MacGill began negotiating on behalf of Woodfield with James B. Harmon of Chromagraphics, Inc. to sell Woodfield assets to a limited partnership which would be formed and called Repro Image, Ltd.[1] These negotiations culminated in an asset purchase agreement on November 19, 1993, which provided for the sale of substantially all of Woodfield's assets to Repro and MacGill would become a 15% limited partner in Repro and a Repro employee.

A Bulk Sales Notice dated November 19, 1993, was issued to Woodfield creditors (including Modern) stating that on or after November 30, 1993, a bulk transfer would be made between Woodfield and Repro. After Modern Photo had received (on about November 24th) a letter from Repro's counsel and the Bulk Sales Notice, within the next several days, Don Meek, chairman of Modern Photo, met with Harmon to discuss the outstanding Woodfield account. (R. 275). On November 29, 1993, the Repro limited partnership agreement, with Chromagraphics the

---

1. Chromagraphics would become the general partner of Repro Image, Ltd.

general partner and MacGill a limited partner, was signed. One day later, November 30th, MacGill and Harmon signed an amendment to the asset purchase agreement, providing that Repro "assume[d]" Woodfield's debt to Modern Photo (calculated on that date to have a balance of $206,694.26). (R. 115). On December 1st, an agreement was signed by Meek for Modern Photo and Harmon for Repro, whereby Modern Photo "agree[d] to accept payment from Repro ... in connection with monies owed to Modern Photo" by Woodfield. (R. 32). MacGill began his employment with Repro on December 1st. Modern Photo extended credit for sales to Repro on a new account. Very quickly the business relationship of MacGill and Repro began to unravel, completely disintegrating within a few months.

On March 11, 1994, Modern Photo filed a complaint against both Repro and Woodfield on the account debt and against MacGill on his personal guaranty.[2] On May 27, 1994, the trial court appointed a receiver over Repro and ordered $182,000 posted with the clerk. On September 23, 1994, Modern Photo filed a motion for summary judgment on its claims against Woodfield and MacGill. On December 7, 1994, Repro filed for bankruptcy. After a December 16, 1994 hearing, the trial court granted summary judgment to MacGill, denying summary judgment as to Woodfield, and denying summary judgment to Modern Photo.

## DECISION

■ We quote our recent recitation of the standard of review here applicable:

When reviewing the trial court's ruling on a motion for summary judgment, this court applies the same standard as the trial court. Thus, no deference is given to the trial court's judgment. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Our inquiry is]: Whether a genuine issue of material fact exists which requires resolution by the trier of fact. When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts.

*L.E. Services v. State Lottery Comm'n*, 646 N.E.2d 334, 339 (Ind.Ct.App.1995), *trans. denied* (citations omitted). Generally, the construction or legal effect of a contract is a question of law to be determined by the court. *R.R.S. II Enterprises, Inc. v. Regency Associates*, 646 N.E.2d 56, 60 (Ind.Ct.App. 1995), *reh'g. denied.* The contract of a guarantor

is to be construed from the intention of the parties which is to be ascertained from the instrument itself read in the light of surrounding circumstances. Our courts have held that instruments of this sort should receive a liberal interpretation, which means that words should not be forced out of their natural meaning, but that they should receive a fair and reasonable interpretation so as to attain the objects for which the instrument is designed and the purposes to which it is applied.

*Orange–Co., Inc. v. Brown*, 181 Ind.App. 536, 393 N.E.2d 192, 195 (Ind.Ct.App.1979) (citations omitted). Further, we interpret a guaranty applying the same rules applicable to other contracts, and in the absence of ambiguity, the construction of a guaranty is a question of law. *Loudermilk v. Casey*, 441 N.E.2d 1379, 1383 (Ind.Ct.App.1982).

■ MacGill argued to the trial court that (1) "Modern Photo took actions which materially changed and altered the nature of the obligation underlying MacGill's" guaranty, and (2) "Modern Photo accepted Repro Image, Ltd.'s assumption" of the Woodfield debt to Modern Photo "and agreed that payment 'shall be made by Repro Image, Ltd.;'" both of which "discharged" MacGill from any responsibility under the guaranty. (R. 875). The trial court agreed, holding that the Modern Photo—Repro agreement ("the Agreement") "changed the legal identity of the principal's contract" and was a "material al-

2. Repro cross-claimed against MacGill and Woodfield; Woodfield and MacGill cross-claimed against Repro; and MacGill and Woodfield filed a counterclaim against Repro, Chromagraphics and Harmon. Other matters raised in these pleadings are not in issue in this appeal.

teration" made without MacGill's "knowing consent," thereby effecting a discharge of MacGill's guaranty obligation, citing *Merchants Nat'l Bank & Trust Co. v. Lewark*, 503 N.E.2d 415 (Ind.Ct.App.1987) and *Cunningham v. Mid State Bank*, 544 N.E.2d 530 (Ind.Ct.App.1989). (R. 910, 911).

Our determination as to whether as a matter of law MacGill was discharged from his liability pursuant to his personal guaranty turns upon the terms of the guaranty and the Agreement.[3]

The guaranty agreement (wherein Woodfield is "Buyer," Modern Photo is "Seller," and MacGill is "Guarantor") states that "in consideration of the past and future sale ... of goods and merchandise by Seller to Buyer and the extension of credit by Seller to Buyer in connection with such sales," MacGill "does hereby UNCONDITIONALLY AND ABSOLUTELY GUARANTEE to Seller payment of the purchase price of such goods." (R. 35). Further, the personal guaranty contained the following "Waivers Regarding the Guaranteed Debt:"

The guarantor expressly waives the following: notice of the incurring of debt by the Buyer; notice of default on the debt; the acceptance of this guaranty by the Seller; presentment and demand for payment, protest, notice of protest and notice of dishonor or nonpayment of any instrument evidencing debt of the Buyer; any right to require the pursuit of any remedies against the Buyer, including commencement of suit, before enforcing this guaranty (this is a guaranty of payment, not a guaranty of collection); any right to have security or the right of setoff applied before enforcing this guaranty; and any right of subrogation to the Seller's rights against the Buyer.

The guarantor *hereby consents and agrees* that renewals and extensions of time of payment (including interest rate adjustments), surrender, release, exchange, substitution, dealing with or taking of additional collateral, *taking* or release *of other guarantors,* abstaining from taking advantage of or realizing upon any collateral security or other guaranty, and *any and all other forbearances* or indulgences granted by the Seller to the Buyer or any other party may be made, granted or effected by the Seller *without notice to the guarantor and without in any manner affecting his liability* hereunder. The guarantor hereby expressly consents to any impairment of collateral including, but not limited to, failure to perfect a security interest and release of collateral.

(R. 35–36) (emphasis added; these phrases later discussed).

The complete terms of the Agreement between Modern Photo and Repro provide that Modern Photo

does hereby agree to accept payments from Repro Image, Ltd. ... in connection with monies owed to Modern Photo Offset Supply by The Woodfield Group, Inc. This amendment shall not release The Woodfield Group, Inc. and/or Richard C. MacGill from liability, but is merely intended to be an acknowledgment that the payments shall be made by Repro Image, Ltd., pursuant to Repro Image, Ltd.'s assumption of said debt. . . .

(R. 32).

■ Indiana law has long "agreed that words used in a contract are to be given their usual and common meaning unless, from the entire contract and the subject-matter thereof, it is clear that some other meaning was intended." *Haworth v. Hubbard*, 44 N.E.2d 967, 968, 220 Ind. 611 (1942). Moreover, all of the words in the contract must be considered in determining its meaning. *Id.* 44 N.E.2d at 969. According to the guaranty, MacGill agreed to unconditionally and absolutely guarantee payment to Modern Photo for goods purchased by Woodfield.

---

3. Because both the guaranty and the Agreement were specifically designated by the pleading of Woodfield and MacGill opposing Modern Photo's motion for summary judgment, (R. 864, designating "entire Affidavit of Richard C. MacGill," R. 64, R.Supp. I. 61 affidavit says guaranty "attached hereto as Exhibit A," *Id.* at 65 is the guaranty; R. 864, designating Exhibit B "to Modern Photo's Complaint," Exhibit B. is the Agreement, R. 32), Woodfield and MacGill's contentions that the designations made by Modern Photo were inadequate are not dispositive.

■ Even if we were to assume that Repro was an additional guarantor, MacGill expressly consented to Modern Photo's taking of other guarantors without notice to him and without affecting his liability under the guaranty. The term giving MacGill's consent to the taking of other guarantors is specific. Woodfield and MacGill argue that the later phrase consenting to "any and all other forbearances or indulgences" is too ambiguous to constitute MacGill's consent to the Agreement. However, the phrase is general and unspecific with respect to MacGill's consent. Therefore, the specific provision consenting to the taking of other guarantors controls. *George S. May Int'l Co. v. King,* 629 N.E.2d 257, 261 (Ind.Ct.App.1994), *reh'g. denied, trans. denied.*

■ Likewise, the terms of the Agreement expressly provide that it does not release Woodfield or MacGill from liability for the debt of Woodfield to Modern Photo. The subsequent reference to Repro's "assumption" of the Woodfield debt is general and unspecific in context; thus, the specific provision denying any release supersedes such a general, unspecific reference. *Id.* Moreover, an "assumption" by Repro of the debt does not thereby release the original debtor. *Kelso v. Fleming,* 3 N.E. 830, 831, 104 Ind. 180 (1885). Such only results from a novation. *Id.* "To effect a novation requires (1) a valid existing contract, (2) the agreement of *all parties* to a new contract, (3) a valid new contract, and (4) an extinguishment of the old contract in favor of the new one." *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1233 (Ind.1994) (emphasis added). The Agreement cannot be read to constitute a novation.

The trial court cited *Merchants Nat'l Bank & Trust Co. v. Lewark,* 503 N.E.2d 415 (Ind. Ct.App.1987), for the proposition that under Indiana law a guarantor is discharged from his obligation by a material alteration or change in the principal's obligation without his knowledge or consent. The Lewarks had signed a mortgage in April of 1982. On December 1, 1983, the bank executed a loan agreement with the Athletic Annex, which the court found to have materially altered the Lewarks' April 1982 mortgage. On December 8, 1983, the Lewarks executed a guaranty to their April 1982 mortgage, which contained no reference to the Athletic Annex loan agreement. The guaranty was signed by the Lewarks after the creditor had taken action to materially alter the Lewarks' obligation. The timing of the *Lewark* parties' actions is unlike that before us here; there are no facts before us which suggest that Modern Photo altered the Woodfield obligation before MacGill personally guaranteed the Woodfield debt.

The court further cited *Cunningham v. Mid State Bank,* 544 N.E.2d 530, 534 (Ind. Ct.App.1989), for the statement that a "material alteration which will effect the discharge of a guarantor must be a change which alters the legal identity of the principal's contract, substantially increases the risk of loss to the guarantor, or places the guarantor in a different position." The trial court then found "the legal identity of the principal's contract was changed" from Woodfield to Repro. However, as *Cunningham* makes explicit, the change in legal identity of a contract is an alteration in the "obligation," or "underlying contract." *Id.* Thus, the merger of one bank into another and the renaming of the survivor corporation did not materially alter the underlying contract between the creditor and the obligor, and the liability of the personal guarantors continued. Here, the Agreement does not materially alter the obligation of MacGill to guarantee payment of the Woodfield debt to Modern Photo.[4] As we did in *Cunningham,* we cannot find the action of the creditor, i.e. Modern Photo's signing the Agreement, to either increase the risk of loss to MacGill or to place him in a different position.

Finally, we briefly address two authorities cited by Woodfield and MacGill. First, *Bowyer v. Clark Equip. Co.,* 171 Ind.App. 431, 357 N.E.2d 290, 294 (1976) is cited for the principle that a waiver of consent contained in a guaranty must be expressly stated. In

---

4. We note that Modern Photo's complaint sought against Woodfield on account an amount which corresponds to their attached billing records through November 29, 1993; the same amount was sought from MacGill in the count on his guaranty.

*Bowyer*, the guarantor's waiver of "notice of his principal's dishonor or default on any instrument" was held to not "conclusively state ... the express intention of waiving the right to notice of the principal's default on the account debts owed." *Id.* In the guaranty before us, MacGill's express consents include the taking of additional guarantors. Second, Woodfield and MacGill direct us to *Orange–Co., Inc. v. Brown, supra.*, for the proposition that a guarantor's liability cannot be extended by implication beyond the express terms of the guaranty. In that case, Orange–Co., Inc. had executed a guaranty for a tenant on his lease. Months later, the tenant executed a mortgage to build on the property. Orange–Co., Inc. was not party to the mortgage. After the foreclosure of the mortgage and sale of the property at sheriff's sale, the lessor sought to collect for the loss of her real estate from Orange–Co., Inc. We held that because Orange–Co., Inc. only guaranteed the lease, it could not be inferred to have "assumed subsequent liability as a guarantor on the mortgage and note." 393 N.E.2d at 196. The express terms of Mac-Gill's guaranty have not been expanded beyond his liability for the Woodfield debt.

We reverse the summary judgment for MacGill and direct the trial court to enter summary judgment on behalf of Modern Photo on MacGill's liability as guarantor on the Woodfield account. Accordingly, we remand for further proceedings not inconsistent with this opinion.

SHARPNACK, C.J., and RILEY, J., concur.